# HENDERSON ET AL. *v.* UNITED STATES

No. 84–1744.   Argued April 1, 1986—Decided May 19, 1986

322

POWELL, J., delivered the opinion of the Court, in which BURGER, C. J., and REHNQUIST, STEVENS, and O'CONNOR, JJ., joined. WHITE, J., filed a dissenting opinion, in which BRENNAN, MARSHALL, and BLACKMUN, JJ., joined, *post*, p. 333.

*Denise Anton* argued the cause for petitioners. With her on the briefs were *Alex Reisman* and *Paul G. Sloan.*

*Roger Clegg* argued the cause for the United States. On the brief were *Solicitor General Fried, Assistant Attorney General Trott, Deputy Solicitor General Frey, Charles A. Rothfeld,* and *Patty Merkamp Stemler.*

JUSTICE POWELL delivered the opinion of the Court.

The Speedy Trial Act, 18 U. S. C. § 3161 *et seq.* (1982 ed. and Supp. II), as amended in 1979 and in 1984, commands that a defendant be tried within 70 days of the latest of either the filing of an indictment or information, or the first appearance before a judge or magistrate. Section 3161(h)(1)(F) excludes from this time "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." This case requires us to decide the narrow questions whether that exclusion is limited to reasonably necessary delays, and whether it applies to delays occasioned by the filing of posthearing briefs on motions.

I

A jury convicted petitioners of charges arising out of manufacture, possession, and distribution of controlled sub-

stances.[1]   The evidence at trial showed that in February and April 1980 petitioner Henderson, under the alias "Richard Martin," placed orders with a scientific supply company in Ohio for chemicals that could be used in the manufacture of illegal drugs.   The orders attracted the attention of the Drug Enforcement Agency.   Agents obtained a warrant from a United States Magistrate, authorizing installation of an electronic transmitter in one of the chemical containers.   Henderson drove from California to Ohio, picked up the second order of chemicals on June 24, and headed west.   Agents lost the tracking signal despite their following by both car and plane, only to receive it later in July from petitioner Freedman's house near Watsonville, California.   A search pursuant to warrant on July 17 revealed an illicit drug factory. The last of the codefendants, Peter Bell, was arraigned on September 3, 1980.[2]

The Speedy Trial Act requires that trial begin within 70 days of the latest indictment, information, or appearance—in this case, September 3.   18 U. S. C. § 3161(c)(1).   A timely trial would have commenced on November 12, 1980, barring periods of excludable delay.   Overlapping filings by petitioners and the Government, however, kept a suppression motion pending from its filing on November 3, 1980, through a hear-

[1] The jury convicted all three petitioners of conspiracy to manufacture and possess with intent to distribute methamphetamine and phenyl-2-propanone, see 21 U. S. C. § 846; petitioners Thornton and Freedman of manufacture and possession with intent to distribute of methamphetamine, see § 842(a)(1); and petitioner Henderson of traveling interstate with intent to promote the manufacture and possession of methamphetamine, see 18 U. S. C. § 1952(a)(3).

[2] Codefendant Bell was severed from petitioners' trial on November 1, 1982.   All defendants who are joined for trial generally fall within the speedy trial computation of the latest codefendant.   See 18 U. S. C. § 3161(h)(7).   Once Bell was joined with petitioners in the September 3 superseding indictment, their 70-day period was measured with respect to his.

ing on that motion on March 25, 1981.[3]  The court deferred decision on the motion pending receipt of posthearing submissions from the parties, the last of which was filed on December 15, 1981.  See App. 29–31.  The District Court finally denied the motion to suppress on January 19, 1982.

From January 25 to May 10, 1982, both parties filed additional motions before the District Court—on January 25 the Government moved to set the case for trial, and on March 23 petitioners moved to reconsider the motion to suppress.  On February 3, the court held a hearing on the Government's motion and granted a continuance through April 21 to allow defense counsel to file a motion for reconsideration of the order denying the suppression motion.[4]  After a hearing on May 10, the court denied petitioners' motion to reconsider the motion to suppress, and set a trial date of September 13, 1982.  The court also entered an order excluding, for purposes of the Act, the time from May 10 to September 13 based on a provision of the Act that allows such exclusion by the Court to satisfy the "ends of justice."  *Id.*, at 32–33; see 18 U. S. C. § 3161(h)(8)(A).[5]

[3] On November 3, 1980, petitioners filed a motion to suppress evidence. 2 Record, Doc. Nos. 24–26.  On November 24, petitioners filed a supplemental memorandum concerning alleged misrepresentations in the affidavit supporting the search warrant.  On its own motion, the District Court rescheduled the hearing from November 26, 1980, to January 14, 1981, and again to January 28, 1981.  A third continuance, at petitioner Freedman's request, moved the hearing date to February 18, 1981.  Meanwhile, on January 13, petitioners filed a motion to reveal the identity of a confidential informant.  At the February 18 hearing, petitioners requested and received a continuance to March 2 to reply to the Government's responses, filed only the day before.  The hearing was held instead on March 25 after a 21-day continuance from the court on March 4.

[4] Petitioners filed the motion on March 23; the Government filed its response on April 14, 1982.  3 Record, Doc. Nos. 74–75.

[5] Section 3161(h)(8)(A) provides for the exclusion of

"[a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such con-

On July 23, 1982, Thornton filed a motion to dismiss the superseding indictment for violation of the Speedy Trial Act. The other two petitioners subsequently joined this motion. The District Judge held a hearing almost two months later, on September 8, and denied the motion from the bench on that date. He filed a memorandum and order outlining his reasons exactly 30 days later. At that time, the judge also entered an order excluding the time from October 8 to November 1, again based on the "interests of justice." 3 Record, Doc. Nos. 98–99. Trial commenced on November 1, 1982.

Petitioners appealed their convictions, arguing, *inter alia*, that the District Court could exclude from their Speedy Trial Act computation only delays that were "reasonably necessary." 746 F. 2d 619, 622 (CA9 1984). The Court of Appeals held that the statute "excludes delays resulting from pretrial motions without qualification." *Ibid.* The court noted that Congress had explicitly provided that the excludability of certain other delays depended on their reasonableness, but had not done so for delays from pretrial motions. *Ibid.* Judge Ferguson dissented, relying on the Act's legislative history and the interpretations of other Circuits. *Id.*, at 625–626. We granted certiorari to resolve a conflict among the Circuits.[6] 474 U. S. 900 (1985). We now affirm.

___

tinuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial."

[6] Several Courts of Appeals have read into 18 U. S. C. § 3161(h)(1)(F) a requirement that only delays that are "reasonably necessary" may be excluded from the computation of the 70-day period. *United States* v. *Ray*, 768 F. 2d 991, 998–999 (CA8 1985); *United States* v. *Mitchell*, 723 F. 2d

## II

The Speedy Trial Act requires that a criminal trial must commence within 70 days of the latest of a defendant's indictment, information, or appearance, barring periods of excludable delay. *United States* v. *Rojas-Contreras*, 474 U. S. 231 (1985); see 18 U. S. C. § 3161(c)(1). Section 3161(h) (1)(F) (subsection (F)) excludes from these 70 days certain delays occasioned by the filing of pretrial motions:

> "(h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:

> "(1) *Any period of delay* resulting from other proceedings concerning the defendant, including but not limited to—

> .        .        .        .        .

> "(F) *delay resulting from any pretrial motion,* from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" (emphasis added).

## A

On its face, subsection (F) excludes "[a]ny period of delay" caused by "any pretrial motion," "from the filing of the motion through the conclusion of the hearing." The plain terms of the statute appear to exclude all time between the filing of and the hearing on a motion whether that hearing was prompt or not. Moreover, subsection (F) does not require

1040, 1047 (CA1 1983); *United States* v. *Janik,* 723 F. 2d 537, 543 (CA7 1983); *United States* v. *Novak,* 715 F. 2d 810, 819–820 (CA3 1983), cert. denied *sub nom. Ware* v. *United States,* 465 U. S. 1030 (1984); *United States* v. *Cobb,* 697 F. 2d 38, 44 (CA2 1982). Other Circuits have held that § 3161(h)(1)(F) excludes without qualification the entire period between the filing of the motion and the conclusion of the hearing. 746 F. 2d 619 (CA9 1984) (case below); *United States* v. *Stafford,* 697 F. 2d 1368, 1373 (CA11 1983). Cf. *United States* v. *Horton,* 705 F. 2d 1414, 1416 (CA5), cert. denied, 464 U. S. 997 (1983).

that a period of delay be "reasonable" to be excluded, although Congress clearly knew how to limit an exclusion: in § 3161(h)(7), Congress provided for exclusion of a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." Apart from this single instance, every other provision in § 3161(h) provides for exclusion of "any period of delay."[7] The provision excludes, for example, all of the time consumed by an interlocutory appeal, § 3161(h)(1)(E), by a competency examination, § 3161(h)(1)(A), and by the defendant's unavailability, § 3161(h)(3)(A). As the Court of Appeals concluded: "The difference between (7) and (1) through (6) is a strong indication that exclusion of the periods defined in (1)–(6) was intended to be automatic." 746 F. 2d, at 622.

The legislative history of the 1979 Amendments to the Act supports this reading of subsection (F).[8] That history shows that Congress was aware of the breadth of the exclusion it was enacting in subsection (F). The Senate Judiciary Com-

---

[7] Section 3161(h)(1)(H), which provides for the exclusion of delay from transporting a defendant "from another district, or to and from places of examination or hospitalization," presumes that any such delay over 10 days is unreasonable.

[8] The discussion in S. Rep. No. 96–212, p. 34 (1979), see *post,* at 336–337, concerns time spent *preparing pretrial motions.* The pertinent language from the Report reads:

"Although some witnesses contended that all time consumed by motions practice, from preparation through their disposition, should be excluded, the Committee finds that approach unreasonable. This is primarily because, in routine cases, preparation time should not be excluded where the questions of law are not novel and the issues of fact simple. However, the Committee would permit through its amendments to subsection (h)(8)(B) reasonable preparation time for pretrial motions in cases presenting novel questions of law or complex facts." S. Rep. No. 96–212, at 33–34.

Our holding concerns time *after the submission of pretrial motions.* We note in such situations that the trial court is in a position to determine what, if any, additional submissions that it needs from the parties, and when those submissions are due.

mittee acknowledged that "if basic standards for prompt consideration of pretrial motions are not developed," the liberalized 1979 Amendments to subsection (F) "could become a loophole which could undermine the whole Act." S. Rep. No. 96–212, p. 34 (1979). In its subsequent consideration of subsection (F), the House of Representatives did not qualify the exclusion in any way or limit such potential abuse by statute. Instead the House adopted the Senate's version "with the intention that potentially excessive and abusive use of this exclusion be precluded by district or circuit guidelines, rules, or procedures relating to motions practice." H. R. Rep. No. 96–390, p. 10 (1979). Congress clearly envisioned that any limitations should be imposed by circuit or district court rules rather than by the statute itself.[9] Such rules, developed pursuant to § 3166(f), should provide the assurance of a speedy disposition of pretrial motions.

Petitioners largely concede these arguments and advance two other contentions for limiting subsection (F)'s exclusion to time that is "reasonably necessary" for the disposition of pretrial motions. First, they contend that the phrase "other prompt disposition" within subsection (F) implies that a district court may not unreasonably delay a criminal trial by deferring a hearing on a pretrial motion. Two of the Courts of Appeals that have limited the exclusion in subsection (F) to delays that are "reasonably necessary" have relied on this argument. *United States* v. *Janik*, 723 F. 2d 537, 543 (CA7 1983); *United States* v. *Cobb*, 697 F. 2d 38, 41–42 (CA2 1982). But a reading of subsection (F) in connection with § 3161 (h)(1)(J) (subsection (J)), which allows exclusion of up to 30

---

[9] The dissent relies on district court rules as a basis for invoking petitioners' standard. *Post*, at 337–338, n. 2. The interpretation of the local rule, however, is a matter on which we should defer to the Court of Appeals for the Ninth Circuit. It found no violation of the rule.

It would be useful in the future for circuit and district court rules to include specific timetables, thereby giving substance to the obligations of prosecutors and defense counsel under the Speedy Trial Act.

days while the district court has a motion "under advisement," *i. e.*, 30 days from the time the court receives all the papers it reasonably expects, undermines this conclusion. The phrase "prompt disposition" was intended to prevent a district court from using subsection (F) to exclude time after a motion is taken under advisement when that time fails to qualify for exclusion under subsection (J).

Subsection (F), written in the disjunctive, excludes time in two situations. The first arises when a pretrial motion requires a hearing: subsection (F) on its face excludes the entire period between the filing of the motion and the conclusion of the hearing. The second situation concerns motions that require no hearing and that result in a "prompt disposition." There, the promptness requirement was "intended to provide a point at which time will cease to be excluded, where motions are decided on the papers filed without hearing." S. Rep. No. 96–212, at 34. The "point at which time will cease to be excluded" is identified by subsection (J), which permits an exclusion of 30 days from the time a motion is actually "under advisement" by the court. Without the promptness requirement in subsection (F), a court could exclude time beyond subsection (J)'s 30-day "under advisement" provision simply by designating the additional period as time "from the filing of the motion" through its "disposition" under subsection (F). As the Senate Committee on the Judiciary explained:

> "In using the words 'prompt disposition', the committee intends to make it clear that, in excluding time between filing and disposition on the papers, the Committee does not intend to permit circumvention of the 30-days, 'under advisement' provision contained in Subsection (h)(1)(J). Indeed, if motions are so simple or routine that they do not require a hearing, necessary advisement time should be considerably less than 30 days." *Ibid.*

We therefore conclude that for pretrial motions that require a hearing, the phrase "or other prompt disposition" in subsec-

tion (F) does not imply that only "reasonably necessary" delays may be excluded between the time of filing of a motion and the conclusion of the hearing thereon.

Petitioners' second argument rests on the sentence that immediately follows the extract quoted above: "Nor does the Committee intend that additional time be made eligible for exclusion by postponing the *hearing date* or other disposition of the motions beyond what is *reasonably necessary.*" *Ibid.* (emphasis added). Four Courts of Appeals have relied on this legislative history to support their "reasonably necessary" qualification in subsection (F). *United States* v. *Ray*, 768 F. 2d 991, 998 (CA8 1985); *United States* v. *Mitchell*, 723 F. 2d 1040, 1047 (CA1 1983); *United States* v. *Novak*, 715 F. 2d 810, 819 (CA3 1983), cert. denied *sub nom. Ware* v. *United States*, 465 U. S. 1030 (1984); *United States* v. *Cobb*, 697 F. 2d 38, 44 (CA2 1982).

Any qualification of subsection (F)'s exclusion based on this sentence, which appears in the paragraph discussing motions decided without a hearing, would be at odds with the plain language of the statute. It also would be contrary to other passages contained in both the House and Senate Reports that specifically concern the "hearings" provision of subsection (F). See *supra*, at 327–328. We therefore decline to read into subsection (F) a "reasonably necessary" qualification based on this single sentence from the Senate Report. We instead hold that Congress intended subsection (F) to exclude from the Speedy Trial Act's 70-day limitation all time between the filing of a motion and the conclusion of the hearing on that motion, whether or not a delay in holding that hearing is "reasonably necessary."

## B

The remaining issue is whether subsection (F) excludes time after a hearing on a motion but before the district court receives all the submissions by counsel it needs to decide that motion. Cf. § 3161(h)(1) (excluding "[a]ny period of delay re-

sulting from other proceedings concerning the defendant"). Although the language of subsection (F) is not clear on this point, we are convinced that its structure, as well as reason, requires that such time be excluded.

The provisions of the Act are designed to exclude all time that is consumed in placing the trial court in a position to dispose of a motion. See, e. g., S. Rep. No. 96–212, at 9–10. District courts often find it impossible to resolve motions on which hearings have been held until the parties have submitted posthearing briefs or additional factual materials, especially where the motion presents complicated issues. It would not have been sensible for Congress to exclude automatically all the time prior to the hearing on a motion and 30 days after the motion is taken under advisement, but not the time during which the court remains unable to rule because it is awaiting the submission by counsel of additional materials. Moreover, for motions decided solely on the papers, Congress has allowed exclusion of time during which the parties are filing their briefs. 18 U. S. C. §§ 3161(h)(1)(F), (J); see *supra*, at 328–329. It is consistent with this exclusion to exclude time when the court awaits the briefs and materials needed to resolve a motion on which a hearing has been held—motions that the Senate Judiciary Committee recognized as typically more difficult than motions decided on the papers. See S. Rep. No. 96–212, at 34. We therefore hold that subsection (F) excludes time after a hearing has been held where a district court awaits additional filings from the parties that are needed for proper disposition of the motion.

## III

We now calculate the number of nonexcludable days before petitioners' trial. The Act began to run on September 3, 1980, the date of arraignment of codefendant Bell. On October 22, 1980, the District Court entered—with the consent of the parties—a continuance through November 12. The District Court excluded that continuance from the Speedy Trial

Act's 70-day limit under § 3161(h)(8)(A) in "the interest of justice." App. 26–27; see 746 F. 2d, at 623–624. That exclusion is not challenged in this Court.

The motion to suppress was filed during this continuance, on November 3, 1980. App. 27. The hearing on this and subsequent motions was held on March 25, 1981. *Id.*, at 28. This time is automatically excludable under § 3161(h)(1)(F). The court declined to reach a final decision on the suppression motion at that hearing because it needed further information. *Id.*, at 28–29. The court did not receive all filings in connection with the motion until December 15, 1981, when the Government submitted its response to petitioners' memorandum and request for an evidentiary hearing. *Id.*, at 31. That time is also excludable, plus 30 days for the District Court to take the matter under advisement. We therefore exclude the period from March 25, 1981, through January 14, 1982.

On January 25, 1982, the Government filed a motion to set the case for trial, noticed for February 3. We need not decide whether this time is excludable under subsection (F) as it does not affect the disposition of this case. On February 3, the court continued the case until April 21, to afford defense counsel the opportunity to file a motion to reconsider the suppression ruling. *Ibid.* The District Court subsequently found that this time was excludable under § 3161(h)(8)(A) as a continuance necessary for the "interests of justice." *Id.*, at 34.[10] On March 23, petitioners filed their motion for reconsideration. Under subsection (F), an exclusion for this pending motion ran from March 23 until the disposition by hearing on May 10. See App. 33. At that time, the court stated that it would exclude under § 3161(h)(8)(A) the time from May 10 to September 13, the new trial date, because of the difficulty of coordinating the schedules of five defense attorneys. The court entered a similar order on September 13

---

[10] The unexplained failure of the District Court to find the delay from any continuance to be excludable until October 1982 has not been argued by either party before this Court, and therefore is also not before us.

that extended through the ultimate trial date of November 1, 1982. Neither of those orders is properly before us. As the case stands here, it presents 69 nonexcludable days of delay, and therefore the Speedy Trial Act was not violated.[11]

## IV

The judgment of the Court of Appeals for the Ninth Circuit is affirmed.

*It is so ordered.*

JUSTICE WHITE, with whom JUSTICE BRENNAN, JUSTICE MARSHALL, and JUSTICE BLACKMUN join, dissenting.

The purpose of the Speedy Trial Act of 1974, as amended in 1979 and in 1984, 18 U. S. C. § 3161 *et seq.* (1982 ed. and Supp. II), is to quantify and make effective the Sixth Amendment right to a a speedy trial. S. Rep. No. 96–212, p. 6 (1979); S. Rep. No. 93–1021, p. 1 (1974). To this end, the Act entitles a criminal defendant to dismissal of the charges pending against him if he is not brought to trial within 70 days of his initial appearance or indictment. 18 U. S. C. §§ 3161(c), 3162. In computing the running of this 70-day period, the Act permits certain periods of time to be excluded. These exclusions are designed to take account of specific and recurring periods of delay which often occur in criminal cases; they are not to be used either to undermine the time limits established by the Act, or to subvert the very purpose the Act was designed to fulfill. Nonetheless, this is precisely the result achieved by the majority's reasoning, as it allows trial judges indefinitely to delay disposing of pretrial motions. For this reason, I dissent.

As interpreted by the majority, § 3161(h)(1)(F) (subsection (F)) excludes the entire period between the filing of the pretrial motion and the date on which the motion is finally taken under advisement. For motions requiring a hearing, all time

---

[11] The count is 49 days from September 3, 1980, to November 22, 1980, and 20 days from January 14, 1982, to February 3, 1982.

is excluded from the date the motion is filed through the conclusion of the hearing. *Ante*, at 329–330. There is no requirement that the hearing be held promptly, and the reason for the delay is irrelevant. Regardless of whether a hearing is postponed due to a stipulated continuance, the sudden illness of counsel, or the trial judge's decision to play golf, until the hearing is concluded, the 70-day clock remains at a standstill. Moreover, if at the conclusion of the hearing the trial judge determines that more information would be helpful to his resolution of the motion, or if the prosecutor simply announces his intention to file supplemental papers, the period of excludable delay continues indefinitely until the court receives all of the papers it reasonably expects. Only at that point is the motion considered to be "actually under advisement," and even then, § 3161(h)(1)(J) (subsection (J)) provides for an additional 30 days before the clock begins running again.

For pretrial motions that do not require a hearing, the majority reads subsection (F) to exclude the entire period of time from the filing of the motion through its "prompt disposition." *Ante*, at 329. As construed by the Court, however, the word "prompt" does not refer to the speed at which the trial court is required to handle the motion; instead, it merely serves to designate the "point at which time will cease to be excluded." *Ibid.* That is to say, Congress inserted the word "prompt" simply to distinguish the time at which the motion is taken under advisement from the "final" disposition, or resolution, of the pretrial motion by the court, and thus prevent trial courts from avoiding the 30-day limitation imposed by subsection (J) by claiming that the unlimited delay sanctioned by subsection (F) applies until the court finally disposes of (*i. e.*, decides) the pretrial motion. *Ante*, at 329.

As I see it, the majority has misread both subsection (F) and the Act as a whole. I read subsection (F) to require *all* pretrial motions, regardless of whether they require a hearing, to be disposed of promptly. There is no reason to be-

lieve that Congress did not intend the word "prompt" to mean exactly what it normally means, "performed readily or immediately"; "given without delay or hesitation." Webster's Third New International Dictionary, Unabridged, p. 1816 (1976). Reading the word "prompt" in subsection (F) as a synonym for "quick" rather than as an antonym for the word "final" is a far more logical reading of the statute, and is more in keeping with the overall purpose of the Speedy Trial Act. I also find no merit to the contention that the phrase "other prompt disposition" only applies to pretrial motions to be decided without a hearing. After all, there cannot be an "*other* prompt disposition" of a motion unless there was *a* prompt disposition in the first place, and the plain language of subsection (F) shows that Congress intended hearings on pretrial motions to be conducted just as promptly as any other disposition of such motions.

This reading of subsection (F) is consistent with the structure of the Speedy Trial Act taken as a whole. Subsection (F) allows for the exclusion of the period of delay occurring between the making of the pretrial motion and its submission to the trial court for decision. It is this portion of the pretrial proceedings that the Act commands must be "prompt," and the reason for such a requirement is clear: it forces the parties to submit all necessary papers, and the court to hold any necessary hearings and decide what information it needs, in a timely and orderly manner. As shown above, the use of the word "prompt" in this context does more than simply distinguish this point in time from the time when the motion is finally decided (*i. e.*, the "final" disposition of the motion); instead, it describes the pace at which both the parties and the court are to act in ensuring that the trial judge can rule on the pretrial motion as quickly as possible. The promptness requirement, in other words, expressly is designed to prevent endless and needless delays in the assembly of the relevant material necessary for the trial court to make a reasoned decision on the submitted pretrial motion.

Subsection (F) thus requires prompt submission of material to the court and efficient scheduling of pretrial hearings, and once the court receives all of the papers and arguments it reasonably expects, the motion is considered to be "actually under advisement by the court." Consistent with the purpose of the Act and the promptness requirement imposed by subsection (F), subsection (J) then gives the trial court no more than 30 days in which to consider the parties' contentions and finally to decide the motion. The period during which the court has the motion "under advisement" is governed by subsection (J), and contrary to the majority's holding, *ante*, at 328–329, its 30-day limitation period has no bearing on the speed with which the motion is submitted to the court for decision.

Construing subsection (F) as mandating the prompt scheduling of hearings and submission of material in order for the trial court to take the matter under advisement is supported not only by the language of the statute and the structure of the Act, but also by the legislative history. In explaining the 1979 Amendments to the Act which established subsection (F) in its present form, the Senate Judiciary Committee noted that this portion of the Act "must be read together with the proposed change in clause (ii) of subsection (h)(8)(B) involving 'preparation' for 'pretrial proceedings'." S. Rep. No. 96–212, p. 33 (1979).[1] The Committee expressly re-

---

[1] Title 18 U. S. C. § 3161(h)(8)(B) governs the factors a judge is to consider in determining whether to grant an "ends of justice" continuance authorized by § 3161(h)(8)(A). Subsection (h)(8)(B)(ii) provides:

"Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section."

The majority characterizes this subsection as dealing only with "time spent *preparing pretrial motions.*" *Ante*, at 327, n. 8 (emphasis in original). This description ignores the plain language of the subsection, which states that it applies to "preparation for pretrial proceedings or for the trial

jected as "unreasonable" the suggestion that "all time consumed by motions practice, from preparation through their disposition, should be excluded," finding instead that "in routine cases, preparation time should not be excluded where the questions of law are not novel and the issues of fact simple." *Id.*, at 33–34. Even in cases involving "novel questions of law or complex facts," the Committee concluded that only "reasonable preparation time for pretrial motions" would be necessary. *Id.*, at 34. Despite the narrow reading of the legislative history by the majority, therefore, the Senate Committee clearly meant exactly what it said when it declared that it did not intend that "additional time be made eligible for exclusion by postponing the hearing date or other disposition of the motions beyond what is reasonably necessary." *Ibid.*[2]

---

itself." Furthermore, the majority's statement that its "holding concerns time *after the submission of pretrial motions*" shows how far removed from the purposes of the Speedy Trial Act its opinion lies. By treating the interval between the time when pretrial motions are submitted to the court and the time when the court takes the motion "under advisement" as a time not governed either by the promptness requirement of subsection (F) or the 30-day limitation imposed by subsection (J), the Court carves out a period in which the 70-day limit imposed by the Act does not apply. This construction permits potentially excessive and abusive use of the Act's exclusions, and results in the denial of a speedy trial to a criminal defendant—the precise result which the Act was designed to avoid.

[2] The majority is correct that Congress placed a great deal of reliance on the development of local guidelines relating to motions practice to establish the specific periods of allowable delay under subsection (F). *Ante*, at 328. I disagree, however, that Congress left this potentially unlimited period of time to be governed solely by such rules. Although Congress might have intended for the district courts and circuits to quantify the precise limits acceptable under this portion of the Act, Congress made sure that, even without the development of such standards, no more time than what is "reasonably necessary" for the prompt submission of the motion to the trial court for decision would be excluded from the running of the 70-day clock established by the Act.

Moreover, even if the majority is correct that "Congress clearly envisioned that any limitations should be imposed by circuit or district court

Adhering to both the plain language of the statute and its legislative history, the majority of courts considering this question have held that subsection (F) permits the exclusion of only a reasonable amount of time for the trial court to take a pretrial motion under advisement, and that any other result would defeat the purposes of the Act. See *United States* v. *Ray*, 768 F. 2d 991, 997–999 (CA8 1985); *United States* v. *Mitchell*, 723 F. 2d 1040, 1046–1047 (CA1 1983); *United States* v. *Janik*, 723 F. 2d 537, 543–544 (CA7 1983); *United States* v. *Novak*, 715 F. 2d 810, 819–820 (CA3 1983), cert. denied *sub nom. Ware* v. *United States*, 465 U. S. 1030 (1984); *United States* v. *Cobb*, 697 F. 2d 38, 43–45 (CA2 1982); *United States* v. *Smith*, 563 F. Supp. 217, 219–220 (Md. 1983), aff'd, 750 F. 2d 1233 (CA4 1984), cert. denied, 471 U. S. 1057 (1985); *United States* v. *Hawker*, 552 F. Supp. 117, 124–125 (Mass. 1982). Similarly, the Judicial Conference of the United States recognizes that "[i]n some circumstances, the duration of this exclusion may be subject to a reasonableness requirement." Committee on the Administration of the Criminal Law of the Judicial Conference of the United States, Guidelines to the Administration of the Speedy Trial Act of 1974, as Amended (Dec. 1979 rev., with amendments through Oct. 1984), 106 F. R. D. 271, 289

---

rules rather than by the statute itself," *ante*, at 328, the majority fails to consider the applicable local rules relevant to this case. These provide that "[a]ll pre-trial hearings shall be conducted as soon after the arraignment as possible, consistent with the priorities of other matters on the court's criminal docket." U. S. District Court, Northern District of California, Plan for Prompt Disposition of Criminal Cases, Sec. II(4)(F)(4) (revised, Apr. 7, 1980), California Rules of Court 822–824 (West 1986). Although this rule does not offer any specific guidance, it is sufficient to invoke the "reasonably necessary" standard intended by Congress.

Finally, the majority states that it is deferring to the Ninth Circuit's determination that the local rules were not violated in this case. *Ante*, at 328, n. 9. This finding is not supported by the record, for although the lower court cited to the local rules, 746 F. 2d 619, 623 (1984), there is no indication that the panel ever applied the rules to the facts of this case, let alone that it found that the rules had not been violated.

(1984). Finally, commentators have also noted the necessity for this construction, finding that without it, there would be no need for trial courts to process motions in a timely fashion, thus undermining the purposes of the Act. See Misner, The 1979 Amendments to the Speedy Trial Act: Death of the Planning Process, 32 Hastings L. J. 635, 654–655 (1981); Note, Speedy Trial: A Constitutional Right in Search of Definition, 61 Geo. L. J. 657, 679, and n. 136 (1973), reprinted in Hearings on S. 754 before the Subcommittee on Constitutional Rights of the Senate Committee on the Judiciary, 93d Cong., 1st Sess., 61, 83, and n. 136 (1973).

I agree with this wealth of statutory, judicial, and scholarly authority, and would hold that the Speedy Trial Act requires a trial court to take all pretrial motions under advisement in a prompt manner, and as a result, that only that period of delay found to be reasonably necessary to such a prompt handling of the motion is properly excludable under subsection (F). By holding that the entire period of delay from the filing of a pretrial motion until that motion is taken under advisement is excludable from the 70-day speedy trial computation, the majority allows this exception to swallow the rule and in so doing, undermines the entire Act. As Judge Ferguson concluded in his dissent below, "[w]hile I sympathize with the majority's search for a *per se* rule . . . I cannot agree that the desire for an 'easy' rule can justify the abrogation of the major purpose of the Speedy Trial Act—to insure the defendant a speedy trial." 746 F. 2d 619, 627 (1984). I would reverse the judgment of the Ninth Circuit, and remand for a determination of whether the delay in this case was reasonable.