UNITED STATES of America

v.

Leonard BRISCOE and Loy Gunter.

Crim. No. 92–85 SSH.

United States District Court,
District of Columbia.

Nov. 29, 1993.

Order Dismissing Without Prejudice
Dec. 2, 1993.

Roscoe C. Howard, Jr., George Ellard, Dianne Jean Smith, Office of Independent Counsel, Asst. U.S. Atty., Karen Atkinson (SD/FL), Washington, DC, for plaintiff.

Barry W. Levine, Elaine Metlin, Dickstein, Shapiro & Morin, Washington, DC, for Briscoe.

Michael Heiskell, Johnson, Vaughn & Heiskell, Ft. Worth, TX, for Gunter.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court is defendant Briscoe's motion to dismiss the indictment on speedy trial grounds. Upon careful consideration of the entire record, the Court concludes that it must grant the motion.

### The Background

Defendants were indicted on July 19, 1991, in the Southern District of Florida, based upon information presented to a grand jury by the United States Attorney's Office in that district. The case was then, is now, and always has been a case involving alleged conduct that occurred solely in the Southern District of Florida. The indictment contains sixteen counts, and basically charges conspiracy and making false, fictitious, and fraudulent statements regarding a matter within the jurisdiction of the United States Depart-

ment of Housing and Urban Development (HUD). At issue was illegal conduct (including kickbacks) alleged to have been committed in connection with what was known as the Wedgewood Project in the City of Riviera Beach, Palm Beach County, Florida. *See United States v. Briscoe*, 792 F.Supp. 1, 2 (D.D.C.1992).

At the same time, a second indictment was returned in the Southern District of Florida, charging Leonard Briscoe, one of the two defendants herein, and M. David Steier. Thereafter, while the two United States Attorney's Office's indictments were pending in the Southern District of Florida, the Independent Counsel who had been appointed to investigate possible HUD illegalities obtained an indictment here in the District of Columbia against the same Leonard Briscoe and still another codefendant, Lance W. Wilson. That indictment, filed and designated as Criminal Case No. 91–399, randomly was assigned to the undersigned.

On October 18, 1991, defendant Briscoe filed in the Southern District of Florida a motion to transfer this case to the District of Columbia. (A similar motion was filed seeking a transfer here of the other Southern District of Florida case.) The United States Attorney for the Southern District of Florida opposed the motion for transfer. In its opposition pleading, the United States Attorney noted:

> A defendant seeking transfer must demonstrate specific facts from which the district court can conclude that transfer is required under Rule 21(b). *See United States v. Noland*, 495 F.2d 529, 534 (5th Cir.), *cert. denied*, 419 U.S. 966 [95 S.Ct. 228, 42 L.Ed.2d 181] (1974). Briscoe has made no such showing, and, in fact, has not even *attempted* to show that the District of Columbia would be a more convenient forum for the parties and the witnesses.

Gov't's Opp. to Mot. to Transfer at 2.

The United States Attorney for the Southern District of Florida further stated:

> Such maneuvering evinces Briscoe's desire to take his first shot in what he apparently believes will be a more favorable environment—the District of Columbia. Briscoe's request to move the Florida case to D.C. is

an obvious effort at forum-shopping and an attempt to find a more sympathetic jury. In such circumstances, the "interests of justice" demand that the South Florida cases be tried in South Florida.

> Briscoe further alleges that the Independent Counsel deliberately orchestrated the three separate indictments so as to tax Briscoe's resources to the fullest. This contention is incorrect. Contrary to Briscoe's claims, and as Briscoe is aware, the Florida investigations were initiated well before the Independent Counsel's mandate was expanded to cover Briscoe's conduct and, indeed, before the Independent Counsel was even approved. The two Florida prosecutions are the product of lengthy investigation by a federal grand jury in West Palm Beach, in conjunction with the FBI and the Public Integrity Section, the Northern Major Crimes Division and the Major Frauds Unit of the U.S. Attorney's Office. Venue is proper in this judicial district. There is a substantial federal interest in trying these cases in Palm Beach County, the location of the HUD housing project which is named in the indictment. Briscoe has made no showing that the government chose this venue abusively, *i.e.*, in order to gain an advantage by inconveniencing him. (Citation omitted.)

*Id.* at 5–6.

It appears that in the Southern District of Florida, a district unquestionably overburdened, criminal cases routinely are referred to Magistrate Judges for pretrial matters. *See, e.g., United States v. Briscoe*, 91–8065–Cr–Roettger (S.D.Fla. Feb. 3, 1992) (Order on Various Motions). In any event, by Order dated January 30, 1992, this case—as well as the other South Florida case—was transferred here. In its transfer order, that court stated in part: "This cause arises from the same factual circumstances as one brought in the United States District Court for the District of Columbia." *Id.* at 1. That, unfortunately, was quite inaccurate, and illustrates how improvident the transfer was.

Be that as it may, the undersigned thus acquired two South Florida United States Attorney's Office indictments to join the Independent Counsel's indictment here of de-

fendants Briscoe and Wilson. The Court decided to consolidate one of the South Florida indictments with the Independent Counsel case. *See United States v. Briscoe*, 798 F.Supp. 28 (D.D.C.1992). The Court concluded, however, that this case was so purely and simply a South Florida case that it should be retransferred to the Southern District of Florida. The Court retransferred the case on May 22, 1992. *United States v. Briscoe*, 792 F.Supp. 1 (D.D.C.1992).

This case thus again was docketed in the Southern District of Florida on June 1, 1992. Although the case was no longer in this jurisdiction, meaning that "no case or controversy" was pending here, defendant Briscoe sought a writ of mandamus from the United States Court of Appeals for the District of Columbia Circuit. The undersigned elects not to comment on the merits of the action of the Court of Appeals, but on October 27, 1992, the Court of Appeals granted the petition for a writ of mandamus, and directed the undersigned to ask the Southern District of Florida to return the case here. *In re Briscoe*, 976 F.2d 1425 (D.C.Cir.1992). Such a request was made by letter dated February 16, 1992.[1] An order was entered in the Southern District of Florida transferring the case back here on March 22, 1993. The Clerk's Office here received the case for the second time on April 7, 1993.

### The Speedy Trial Act [2]

■ The Speedy Trial Act requires a criminal trial to commence within 70 days of the later of a defendant's indictment or appearance before a judicial officer. 18 U.S.C. § 3161(c)(1). Certain types of pretrial delay are excluded from this 70–day calculation. 18 U.S.C. § 3161(h). "These exclusions are designed to take account of specific and recurring periods of delay which often occur in criminal cases...." *Henderson v. United States*, 476 U.S. 321, 333, 106 S.Ct. 1871, 1878, 90 L.Ed.2d 299 (1986) (White, J., dissenting). The Act was not designed, however, with the foresight to fit complex, white-collar criminal cases, such as the instant matter with its three separate indictments obtained by two separate prosecutors in two different jurisdictions. Unfortunately, the Act has become both a trap for over-burdened trial judges around which they must maneuver overwhelming caseloads, and a tool for zealous defense attorneys by means of which they can seek to achieve dismissals of indictments against their clients.[3] The Court does believe strongly that the present 70–day time period is too restrictive and should be reconsidered. The Court also believes that there needs to be some provision that can allow judges some flexibility to manage multiple, complex prosecutions of white-collar defendants. Nevertheless, the Court is confined by the strict dictates of the current Act, and thus finds itself compelled to dismiss the instant indictment.

■ As was noted at the outset, the defendants were indicted on July 19, 1991, in

---

1. The undersigned, presiding over the lengthy trial of defendant Briscoe (and of his codefendants Wilson and Steier) when the petition for a writ of mandamus was granted, and anticipating the likelihood of a petition for rehearing by the government, waited for a mandate to issue from the Court of Appeals, but none did. (Nothing was said by the Court of Appeals to indicate that nothing further would be forthcoming.) Finally, the undersigned directed a member of his staff to check with the Court of Appeals, and learned that nothing else would be issued by that court. (Although the undersigned had been an appellate judge on another court for nearly ten years previously, he was unaware of local Rule 15(b)(3) of the D.C. Circuit which provides that "[n]o mandate shall issue in connection with an order granting or denying a *writ of mandamus* ... but the order or judgment granting or denying the relief sought shall become effective automatically twenty-one days after issuance in the absence of an order or other special action of this Court to the contrary." D.C.Cir.R. 15(b)(3).)

2. In this section of this Opinion, it is necessary to repeat in a summary fashion some of the dates which have been set forth above.

3. Although the Court is aware, and of course supportive, of the obligation of a defense attorney to protect fully the interests of his client, the Court does not believe that this duty countenances tactics designed to distort the record. Defendant Briscoe's instant motion to dismiss for Speedy Trial Act violations is replete with subtle distortions of both fact and law. For instance, defendant Briscoe's contention that the government agreed that the speedy trial clock should continue to run while defense counsel took the 59 days that they requested within which to prepare the most recent pretrial motions is completely frivolous.

the Southern District of Florida, based on information presented to a grand jury by the United States Attorney's Office there. On January 30, 1992, Chief Judge Roettger of the Southern District of Florida granted a motion to transfer the case here. Between the date of arraignment and the date of the order of transfer, roughly 14 speedy trial days had passed, due to the pendency of motions. *See* 18 U.S.C. § 3161(h)(1)(F).[4]

On March 17, 1992, approximately a month-and-a-half after the order of transfer was signed, this Court received the case file from the Southern District of Florida. Although the Speedy Trial Act excludes time relating to the transfer of a case, 18 U.S.C. § 3161(h)(1)(G), it is unlikely that the entire 47-day period is legitimately excludable. Moreover, in part due to the Clerk's Office's failure to notify the undersigned that the file had been received from the Southern District of Florida, it must be considered that the speedy trial clock continued to run to a significant extent until the Court received defendant Briscoe's motion to modify his conditions of release on April 15, 1992.

On April 22, 1992, the Government filed a pleading that included a "suggestion for re-transfer." This Court ordered that this obviously South Florida case be transferred back to the Southern District of Florida on May 22, 1992. The court in the Southern District of Florida did not take any action in the case. The retransfer issue raised by defendant Briscoe was not resolved until October 27, 1992, when the United States Court of Appeals for the District of Columbia Circuit took the extraordinary step of acting on a case that was not then pending in this jurisdiction and ordered the undersigned to request the case back from the Southern District of Florida.

Between September 30, 1992, and January 5, 1993, defendant Briscoe was in trial in this Court on the charges contained in the Inde-

pendent Counsel's indictment and the other transferred Southern District of Florida indictment.[5] This time is excludable pursuant to 18 U.S.C. § 3161(h)(1)(D). On February 16, 1993, as it was directed to do by the Court of Appeals, this Court wrote the Clerk of the Southern District of Florida to request the return of the case.

That Court took no further action on this matter for over a month. Finally, on April 7, 1993, this Court again received the case file from the Southern District of Florida. Once again, the Clerk's Office here did not inform the undersigned that the case jacket had arrived. Moreover, because the Court expected to have another three-month criminal trial during the summer and fall, followed by a series of complex criminal trials through the next year, the Court had no available time in which to try this case. Therefore, the Court took steps to obtain another judge to handle the trial before setting a motions and trial schedule. On May 14, 1993, after having received a tentative commitment from a Senior Judge to try the case (which had been projected to last roughly three weeks), this Court held a telephonic status conference to set a motions schedule. (Only one party's counsel—Briscoe's—is here. Defendant Gunter's counsel is in Texas; the prosecutor, as would be expected, is in the Southern District of Florida.)

The entire time period between May 14, 1993, and the present is excludable due to the preparation and pendency of motions. *See* 18 U.S.C. § 3161(h)(1)(F). The Court does not set forth herein the detailed day-by-day analysis that it has made, and it notes that the conclusion it has reached in this case has been reached both with reluctance and after very careful study. However, as of this date, as a consequence of the extraordinary combination of circumstances that have been described, it can be concluded only that con-

---

4. The Court disagrees with the government's contention that the long pendency of an early-filed motion for a pretrial *"James"* hearing, as well as the pendency of other pretrial pleadings that include requests for hearings, continues to toll the clock until such time as this Court decides whether to hold a hearing. The Court declines to adopt such an expansive reading of

*Henderson v. United States,* 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986).

5. The jury in that case returned guilty verdicts on two counts against defendant Briscoe, and not guilty verdicts on the other counts as to him. He currently is incarcerated following sentencing in that case.

siderably more than the allowed 70 speedy trial days have passed. Therefore, the Court is compelled to dismiss ·the indictment, and the obviously desirable result of having a jury resolve the issues which have been the subject of so much investigative and prosecutorial effort will not be achieved.

### The Motion To Withdraw as Counsel of Record

Back on December 7, 1992,·while the case for the second time was within the jurisdiction of the Southern District of Florida, defendant Briscoe's Florida counsel of record filed a motion for leave to withdraw, noting in part:

> Since March, 1992, the Defendant has completely failed to honor his financial obligations to [Florida counsel], despite receiving written requests for payment monthly. . . .

There is no indication in the jacket that that motion was acted upon. On November 2, 1993, defendant Briscoe's lead counsel throughout all of these convoluted proceeds, the firm of Dickstein, Shapiro & Morin (actually, since individuals rather firms must enter their appearances as counsel in a case, attorneys Barry Wm. Levine, Elaine Metlin, and Charles J. Clark) filed a Motion To Withdraw as Counsel of Record. That motion states that defendant "Briscoe can no longer meet his financial obligation to his counsel." That motion has been consented to by defendant Briscoe, and it is granted.

### Counsel's "Praecipe"

On the same day on which they filed their motion to withdraw, defendant Briscoe's counsel somewhat anomalously filed what was labelled as a praecipe, accompanied by a copy of their June 8, 1992, Memorandum in Support of Defendant Briscoe's Motion for Reconsideration [of this Court's retransfer of the case to the Southern District of Florida].

The Court acknowledges that there were two inadvertent errors in its Opinion of May 22, 1992, returning the case to Florida. *See United States v. Briscoe,* 792 F.Supp. at 2 and n. 4. In preparing that Opinion, the · Court was unaware of the contents of Exhibits C and D (the Independent Counsel and the other Southern District of Florida indictments) to the lengthy motion to transfer submitted on behalf of defendant Briscoe to Chief Judge Roettger on October 18, 1992. That error being acknowledged, the Court feels obliged to state (1) its belief, with all due respect, that it is unlikely that Chief Judge Roettger made an analysis of the three separate indictments charging defendant Briscoe (with a different codefendant in each), or it is confident that he would not have transferred this manifestly South Florida case here, and (2) its continued belief—as expressed in footnote 5 of the transfer Opinion—that lead counsel for ·defendant Briscoe was misleading in his representations to Chief Judge Roettger concerning the original motion for transfer. *Id.* at 3.

### The Status of Defendant Gunter

For reasons that are unknown to this Court, no filing has been made here on behalf of defendant Gunter, although his counsel (in Texas) was a participant in the May 14, 1993, telephone conference during which a motions schedule was agreed upon. Although the Speedy Trial Act provides that an "indictment shall be dismissed on motion of the defendant" in the event of a violation of the Act, 18 U.S.C. § 3162(a)(2), defendant Gunter has not waived his rights and nothing would· be accomplished by requiring him to file a motion to dismiss. Accordingly, the indictment is dismissed as to defendant Gunter as well as to defendant Briscoe.

An appropriate Order accompanies this Opinion.

### ORDER

On November 29, 1993, this Court issued an Opinion dismissing the indictment in this case on Speedy Trial Act grounds. The Court did not, however, specify as required by the Speedy Trial Act whether the dismissal was with or without prejudice. *See* 18 U.S.C. § 3162(a)(1). After careful consideration of the statutory factors, the Court concludes that the dismissal is without prejudice.

In determining whether a dismissal under the Speedy Trial Act should be with or without prejudice, the Court must carefully con-

sider, and clearly articulate the effect of, "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(1); *United States v. Taylor,* 487 U.S. 326, 335–37, 108 S.Ct. 2413, 2419, 101 L.Ed.2d 297 (1988).

The Court finds that each of these factors favors dismissal without prejudice. First, the Court finds that defendants were charged with committing serious offenses. The indictment alleged that defendants submitted a series of false statements to the City of Riviera Beach, Florida, in connection with a housing project under the jurisdiction of the Department of Housing and Urban Development. The indictment charged that defendants misrepresented the progress and expense of the project; defendant Gunter allegedly drew on this excess, and then paid kickbacks to defendant Briscoe. *See United States v. Briscoe,* 792 F.Supp. 1, 2 (D.D.C. 1992).

The Court also finds that the facts and circumstances that led to the dismissal were extraordinary. The dismissal was based on the unusual occurrence of three different courts, at least two of which are extremely overburdened, trying to handle three separate indictments brought by two separate prosecutors in two different jurisdictions. The violation certainly was not due to any abuse by the Government, and all the courts involved—certainly including this one—bear some responsibility for the excessive delays that occurred. *See, e.g., United States v. Taylor,* 487 U.S. at 337–41, 108 S.Ct. at 2420–21; *United States v. Wright,* 6 F.3d 811, 813 (D.C.Cir.1993).

Finally, the Court finds that reprosecution would serve the administration of both the Act itself and of justice. As the Court stated in its November 29 Opinion, it does not believe that the Act was designed "with the foresight to fit complex, white-collar criminal cases, such as the instant matter with its three separate indictments obtained by two separate prosecutors in two different jurisdictions." Opinion at 33. Moreover, although any significant period of delay inevitably could be labeled "prejudicial" to a defendant, much of the delay in this case was initiated by, and is attributable to, defendants' own efforts. Finally, the Court believes that justice surely will be better served by allowing a jury to resolve the issues that have been the subject of so much investigative and prosecutorial effort. Accordingly, it hereby is

ORDERED, that the dismissal of the indictment ordered on November 29, 1993, is without prejudice.

SO ORDERED.