WILLIAMS, Senior Circuit Judge,
dissenting in part.
Although I don’t think the court is necessarily wrong in its analysis of the Speedy Trial Act issue, I think the decision is at least questionable — and in the end avoidable because, even if there was a violation, trial counsel’s failure to raise the *454 issue probably didn’t demonstrate ineffective assistance of counsel within the meaning of Strickland, v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Accordingly, I think a remand to the trial court would be the better course.
* * *
The relevant facts are these: On May 10 the government gave notice of its intent to impeach Harris with his prior convictions, and Harris responded on May 12 by filing a motion asking the court to exclude any such evidence. The government filed no opposing papers. There the matters languished until August 5, when the court held a hearing to wrap up pending motions, namely, Harris’s requests for suppression and for exclusion of the Rule 609 evidence. At that time both Harris and the government made clear that as to the Rule 609 motion they intended to file no further papers, and sought neither argument nor an evidentiary hearing. The court on August 5 denied the suppression motion, but no one said anything on the merits of Harris’s effort to exclude the prior convictions. We may infer that at that point the Rule 609 motion was taken “under advisement,” a critical condition under the Act, if it wasn’t already under advisement.
According to the majority, the Act directs exclusion of the entire time from May 12, 2004 (when the defendant filed his motion in response to the government’s Rule 609 notice) until 30 days after August 5, the date of the omnibus hearing on pending pre-trial motions.
The relevant provisions of the Act are exclusions under subsections (F) and (J) of 18 U.S.C. § 3161(h)(1). Subsection (F) excludes
delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion.
Id. § 3161(h)(1)(F). Subsection (J) excludes
delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.
Id. § 3161(h)(l)(J). Because Harris makes no real objection to the exclusion of the period from May 12 to August 5, the only question is how much time thereafter, if any, can be excluded on the basis of the Rule 609 motion. That in turn depends on whether the motion came “under advisement” by the court on August 5 or sooner.
To be clear, my disagreement with the majority concerns only the treatment of the Rule 609 motion. The question is when that motion came under advisement. If that happened only on August 5, as the court says, another 30 days are excluded pursuant to subsection (J); if it came under advisement before August 5, then the 30 days afforded by subsection (J) started running before August 5. Depending on when that moment was, some or all of the 30 days available for the Rule 609 motion under subsection (J) may have run concurrently with the days concededly excluded between May 10 and August 5.
The Supreme Court in Henderson v. United States, 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986), held that subsection (F) announces a general rule of exclusion, irrespective of the reasonableness of the delay, subject to the limit imposed by subsection (J). See id. at 326-29, 106 S.Ct. 1871. According to the Court, only 30 additional days can be excluded under subsection (J) once a “district court has a motion ‘under advisement,’ i.e., 30 days from the time the court receives all the papers it reasonably expects.” Id. at 329, 106 S.Ct. 1871. Henderson goes on *455 to depict two possible scenarios, one where a motion “requires a hearing,” and the other where it does not. Id. CHenderson doesn’t say whether these two exhaust the possibilities.) As to the first, subsection (F) excludes all of the time from the filing of the motion until the hearing, and subsection (J) excludes up to 30 days thereafter. As to the second, where no hearing is required, subsection (J) is triggered at the point where “the court receives all the papers it reasonably expects.” Id. By this the Henderson Court likely meant the period allowed under court rules for responses and replies, see id. at 328, 106 S.Ct. 1871, subject to a trial court’s case-specific adjustments.
The court finds subsections (F) and (J) fully applicable by describing the trial court as having chosen “to address [the Rule 609] motion at a hearing,” i.e., the August 5 event. Majority Op. at 445. On that view the majority excludes the entire time from May 12 to August 5 under subsection (F) (a matter not very important in itself because of the defendant’s concession), plus 30 days after August 5 under subsection (J). A proceeding in which evidence is taken, or the merits of a motion are argued, qualifies as a “hearing” that triggers subsection (J), i.e., the moment of a motion’s coming “under advisement,” but it seems to me questionable to give that effect to a proceeding that features no substantive colloquy on the motion whatever, and occurs long after the filing of papers has drawn to a close. Why didn’t the motion come “under advisement” at the point where the government’s time to respond expired, which under D.D.C.Crim. R. 47(b) would appear to have occurred 11 days after Harris’s May 12 motion?
There is a path by which one might arrive at the court’s conclusion. Henderson divided the universe into motions requiring a hearing and ones requiring no hearing, but left unclear whether there might be other categories. WTiat of motions for which the need for a hearing is uncertain at the time of filing, or at the time when all further filings are complete or time-barred? Assuming Harris’s Rule 609 motion fell into that category until August 5, when it became clear that neither party felt any need for evidence, oral argument, or further papers, perhaps it was only at that moment that the court reasonably understood itself to have “receive[d] all the papers it reasonably expected],” thus triggering subsection (J). A difficulty with this analysis is that it leaves unexplained why the mere possibility of a hearing should stop the clock. Or must the defendant flag the government’s non-response in order to restart the clock? If the courts are to pursue this approach, they will have to invent all the subsidiary rules themselves, with no help from the Act.
Moreover, any such rationale for the court’s result is at least in tension with the First Circuit’s decision in United States v. Scott, 270 F.3d 30 (1st Cir.2001). There the district court had scheduled a hearing for September 16, 1999, but the hearing didn’t take place because of bad weather; the parties then made clear that they were content to submit their motions on the filings. Four months later, the district court called for supplemental briefing. Id. at 54. Although a literal reading of Henderson might yield the conclusion that the district court had not taken the motion “under advisement” on September 16 because the court had not “receive[d] all the papers it reasonably expect[ed],” Henderson, 476 U.S. at 329, 106 S.Ct. 1871, the First Circuit decided that this limbo period could not be excluded:
The [Act] makes no provision for what the district court did here: not decide the motion for 124 days and then retro *456 actively seek to explain the lack of prompt disposition by saying it needed additional filings, although it had taken the matter under advisement earlier. Nor does the [Act] make any provision for a district court effectively to take a matter under advisement for decision, but then to avoid the [Act’s] timeline by saying that matter was not under advisement within the meaning of the [Act]. We do not think the [Act] permits either course of action. Such an approach would undermine the purposes of the [Act],
Scott, 270 F.3d at 56. Scott is plainly distinguishable, to.be sure. There everything suggested that the motion had come under advisement on September 16, whereas here the question of when the motion came under advisement is unresolved — though it is hard to see why it should have been later than the point where a government response was time-barred (evidently 11 days after Harris’s May 12 motion). If subsection (J) was triggered well before August 5, as seems likely, the district court would still have been free to conduct a hearing. But under subsection (J) it would have had to reach that decision within 30 days after the matter came under advisement, or risk restarting the Speedy Trial Act clock.
There are, to be sure, many complex permutations. For example, as the paragraph above suggests, the court may take a motion under advisement but later determine that further briefing or argument is necessary. In such a situation, if the court called for the submissions within 30 days, the period up to that call would be excluded under subsection (J), the time allotted for submissions would be excluded under subsection (F) (because the motion would no longer be under advisement), and only then would the 30-day subsection (J) time limit begin to run again (starting at zero, or subtracting the time elapsed before the call for more submissions?). Also, as other circuits have noted, the 30-day limit of subsection (J) might not apply rigidly when multiple motions are pending before a district court. See Scott, 270 F.3d at 57 n. 19; United States v. Tibboel, 753 F.2d 608, 611-12 (7th Cir.1985). Under Tibboel the multiplicity of motions might call for a period under advisement exceeding 30 days, so that a finding of no violation might be correct even if the Rule 609 motion came under advisement well before August 5. A remand here could disclose details governing the application of this latter exception, if it proved necessary.
Because of the uncertainty surrounding the alleged Speedy Trial Act violation, particularly the date on which the Rule 609 motion should be considered as having been taken “under advisement,” I would remand the case so that the district court could resolve the issue in the most economical way. The briefing suggests (though the trial court may know better) that this would be by first deciding whether, assuming there was a violation, Harris’s attorney’s conduct amounted to ineffective assistance under Strickland. Then, if necessary, the court would decide whether there was a Speedy Trial Act violation, taking into account whatever might shed light on the effects of the parties’ collective inactivity after May 12 with respect to the Rule 609 motion.