968 F.2d 1212
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Herbert DALE DOTSON, Defendant-Appellant.
 No. 91-5176.
 United States Court of Appeals,
Fourth Circuit.
 Argued: April 8, 1992
Decided: July 27, 1992
 
 Argued: Bernard S. Via, III, Bristol, Virginia, for Appellant.
 Donald R. Wolthuis, Assistant United States Attorney, Abingdon, Virginia, for Appellee.
 On Brief: E. Montgomery Tucker, United States Attorney, Julie M. Campbell, Assistant United States Attorney, Abingdon, Virginia, for Appellee.
 Before RUSSELL and WIDENER, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Raising issues pertaining to the Speedy Trial Act, 18 U.S.C. § 3161 (1988), the sufficiency of the evidence to sustain a conviction, and due process of law, Herbert Dale Dotson appeals his conviction for distributing marijuana in violation of 21 U.S.C.s 841(a)(1) (1988). Finding no material error in the district court proceedings, we affirm Dotson's conviction.
 
 I.
 
 2
 Appellant Herbert Dale Dotson was indicted on April 10, 1991, for distributing marijuana in violation of 21 U.S.C.s 841(a)(1) (1988). At arraignment on April 17, 1991, Dotson entered a plea of not guilty, and the court scheduled trial for June 10, 1991. Dotson filed a motion for discovery on May 16, 1991, and filed a motion on May 30, 1991, for severance from the trial of his co-defendant, Lindon Silas Crockett.
 
 
 3
 At a June 4, 1991, hearing on these pretrial motions, the district court granted the defendants' motion to appoint an expert witness to determine if audio tapes of the alleged drug transaction contained exculpatory information, commanded the parties to cooperate on discovery matters, denied Dotson's motion for severance, and continued the defendants' trial date to August 26, 1991.
 
 
 4
 On June 27, 1991, Dotson filed a motion to dismiss the charge against him on the grounds that he was not tried within a 70-day period following his initial appearance on April 17, as is required by 18 U.S.C. § 3161(c)(1), and that he had not signed a waiver of his right to a speedy trial under the Act. At the ensuing motion hearing on July 2, 1991, Dotson argued that the 70-day period had then expired, and that his pretrial motions had not caused any delay in the scheduled trial date. The district court denied the motion to dismiss, stating,
 
 
 5
 [W]hen you compute the dates, the time originally would have run ... on the 26th of June, 1991, 70 days, and with the excludable time under the Act ... you would add 20 days ... which would mean July 16, 1991, and I'm not taking into account these additional motions which would have been filed. In all likelihood ... they would add time, but under any calculation, the Speedy Trial Act would not run before the 16th, and under the facts that the [c]ourt has heard ... there would have been no violation of the Speedy Trial Act. But I am going to give this defendant ... his demand for a speedier trial than that of his co-defendant, even though the statute doesn't require ... it....
 
 
 6
 (J.A. at 24.) The district court then reset Dotson's trial for Monday, July 15, 1991, and granted Dotson's renewed motion for severance from the trial of co-defendant Crockett.
 
 
 7
 During trial, Virginia State Trooper Gary S. Matney testified that he helped coordinate an undercover purchase of marijuana from Dotson through the use of a Government informant, James Jones. Matney testified he could not see the transaction, because it occurred inside Dotson's residence. However, Matney testified, Jones was wired with a transmitting device such that Matney and Detective Russell E. Bostic of the Buchanan County Sheriff's Department could monitor and tape record from a surveillance car the conversations between Jones, Dotson and co-defendant Crockett. After Bostic identified a voice on the audio tape as Appellant Dotson's, a transcript of the tape recording was admitted into evidence-to assist the jury in following the taped conversations-and the Government played the tape recording in open court for the jury. Several pages of the transcript contain a conversation wherein Dotson, Jones and his wife, Clara Jones, negotiate the price for one ounce of marijuana, with Dotson offering to sell for $190 per ounce, and the Jones offering to buy for $175 per ounce. (See J.A. at 81-84.)
 
 
 8
 Informant Jones testified that he carried a concealed device to the drug transaction to transmit conversations to the surveillance car.
 
 
 9
 According to Jones, he and his wife, Clara Jones, Dotson and codefendant Crockett proceeded to Dotson's residence. Dotson there produced small bags containing marijuana from a cupboard. Jones testified that Dotson "was wanting $190 a bag for it, and we bickered the price down and got him down to $180 on the bag." (J.A. at 55.) Jones further testified that he paid Dotson the $180, and that Dotson gave him the marijuana, which Jones then gave to his wife. Jones stated that Dotson held the $180 in his hand "for a minute, and then he put it in his pocket." (J.A. at 56.) Clara Jones' testimony corroborated her husband's account of the transaction.
 
 
 10
 On cross-examination by defense counsel, James Jones acknowledged that he had received payment of $100 from law enforcement authorities for his role in the undercover operation implicating defendant Dotson.
 
 
 11
 At the close of the Government's case, Dotson moved to dismiss on the grounds that the evidence which the Government presented at trial was insufficient establish that Dotson had effected a transfer of marijuana. The district court denied the motion, explaining that "perhaps there is a conflict of fact, but it goes to the credibility of the witness." (J.A. at 78.) After further proceedings, the jury returned a verdict of guilty of charges that Dotson distributed marijuana in violation of 21 U.S.C. § 841(a)(1). Dotson appeals, raising three principal issues.
 
 II.
 
 12
 Dotson first contends that the district court violated his entitlement to a speedy trial under 18 U.S.C. § 3161(c)(1) (1988)[1] because he was not tried until July 15, 1991-more than 70 days after the date of his initial appearance at arraignment on April 17, 1991. The district court denied Dotson's motion to dismiss pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(c)(1), on the grounds that Dotson filed a pretrial defense motion on May 16, 1991, which the court did not decide until June 4, 1991. The district court therefore determined that the 70day limit imposed by 18 U.S.C. § 3161(c)(1) should be extended by 20 days pursuant to 18 U.S.C. § 3161(h)(1)(F).[2] On appeal, Dotson argues that his pretrial motions for discovery and severance cannot serve as the basis for a 20 day extension under section 3161(h)(1)(F) of the Speedy Trial Act because he filed and obtained disposition on those motions without causing any actual delay to the scheduled trial date. Dotson thus argues that no time was properly excludable from the 70-day limit under 18 U.S.C. § 3161(h)(1)(F), and that the district court erred in failing to commence trial by June 26, 1991.
 
 
 13
 Dotson makes precisely the same argument which this circuit rejected in United States v. Velasquez, 802 F.2d 104, 105 (4th Cir. 1986). In Velasquez, we observed, "Defendants argue that the district court erred in automatically excluding all of the period from the filing of the motions to the hearing. Instead, defendants argue that the district court should only have excluded only that period of delay that was actually 'caused' by the motions." 802 F.2d at 105. After noting that the Second, Third, Eighth, Ninth and Eleventh Circuits had rejected this "causation" argument, this court further observed that the Supreme Court's decision in Henderson v. United States, 106 S. Ct. 1871 (1986), also compelled rejection of that position. 802 F.2d at 105. We stated, "[T]he Court held that: 'Congress intended subsection (F) to exclude from the Speedy Trial Act's 70-day limitation all time between the filing of a motion and the conclusion of a hearing on that motion, whether or not a delay in holding that hearing is "reasonably necessary".' " Id. (quoting Henderson, 106 S. Ct. at 1872). Accordingly, we held in Velasquez that "the district court did not err in excluding the period from the filing of the pretrial motions to the hearing." 802 F.2d at 105. In light of our prior ruling in Velasquez, 802 F.2d at 105, Dotson's first argument must fail.
 
 
 14
 Dotson next contends that the district court erred in denying his Motion to Strike the Government's Evidence and Dismiss. In essence, Dotson argues that the Jones informants were not credible witnesses in that their testimony conflicted with the tape recording of the drug transaction, and that since Dotson's conviction rested solely on the testimony of such non-credible witnesses, the Government's evidence was insufficient to sustain his conviction. To support this argument, Dotson points to a portion of the audio tape wherein the informant James Jones states, "I'll be back over tomorrow and we'll do it tomorrow. O.K.? ... I can come over, you just, I can't afford that much.... That's unreal, Dale. I hadn't never in my life paid, I used to sell pounds for that." (J.A. at 87.) Dotson argues that this single statement establishes that, as he testified at trial, Dotson never distributed the marijuana to James Jones, and that he and Jones merely discussed price for possible future transactions. Dotson thereby argues that the Jones' testimony regarding the transaction is not credible. However, when questioned about this portion of the transcript, James Jones testified that he was "negotiating ... future date[s] right after [he] paid the money," i.e., negotiating with Dotson for the price in future marijuana transactions after he had already paid Dotson $180 for the initial bag of marijuana. (J.A. at 68.)
 
 
 15
 We do not perceive that the portion of the audio tape at issue necessarily conflicts with the Jones' testimony at trial. While this part of the recording may be susceptible of Dotson's explanation of the interchange between the defendant and the Jones, it is no less susceptible of the Jones' account of that transaction. As the district court stated, a question of fact for the jury arose from the conflicting testimony of defendant Dotson and the Jones.
 
 
 16
 On challenge to the sufficiency of the evidence to support a conviction, a court of appeals considers the evidence in the light most favorable to the Government and asks whether any rational finder of fact could have found the essential elements of the crime beyond reasonable doubt. E.g., United States v. Vogt, 910 F.2d 1184, 1193 (4th Cir. 1990), cert. denied, 111 S. Ct. 955 (1991) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Viewing the instant evidence in the light most favorable to Government, we are confident that the Jones' testimony, as corroborated by State Trooper Matney and Detective Bostic, presented sufficient evidence for a rational jury to find beyond reasonable doubt that Dotson completed a marijuana transaction with the informant James Jones. We are undisturbed in this conclusion by Dotson's offering of a portion of the audio tape to advance a somewhat plausible theory of his innocence. "Even if the evidence 'can support varying reasonable interpretations, the jury is entitled to choose among them.' " United States v. Garcia, 868 F.2d 114, 116 (4th Cir. 1988), cert. denied, 490 U.S. 1094 (1989) (quoting United States v. Arruda, 715 F.2d 671, 681 (1st Cir. 1983))." The jury [i]s entitled to reject the theory consistent with innocence and accept the one consistent with guilt so long as there is substantial evidence for its choice." 868 F.2d at 116. Since there was substantial evidence to support the jury's determination that Dotson violated 21 U.S.C.s 841(a)(1), Dotson's challenge to the sufficiency of the evidence also fails.
 
 
 17
 Finally, Dotson argues that he was denied his right to due process of law by the Government's failure to disclose that the informant James Jones received payment of $100 from the Government for his undercover role in the marijuana transaction with Dotson. Dotson argues that, because of this omission in disclosure, he was unable to effectively incorporate the Government's payment of $100 to Jones into his defense efforts.
 
 
 18
 It is uncontested that Dotson filed a motion invoking his due process right under Brady v. Maryland, 373 U.S. 83, 87 (1963), to receive on request any exculpatory information in the Government's possession regarding the marijuana transaction. Further, the Government concedes that it "failed to disclose to Dotson before the trial that the state agent had paid Jones $100.00 for his undercover work." (Appellee's Br. at 12.) While the Government's $100 payment to Jones is not properly viewed as exculpatory evidence per se, such information would probably have some minor impeachment value in relation to the informant Jones' testimony. And, as the Supreme Court has stated, "Impeachment evidence ... as well as exculpatory evidence, falls within the Brady rule." United States v. Bagley, 473 U.S. 667, 676 (1985). However, the Court in Bagley further stated that suppression of such impeachment evidence "amounts to a constitutional violation ... and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." Id. at 678 (citing United States v. Agurs, 427 U.S. 97, 112 (1976)). "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Bagley, 473 U.S. at 682.
 
 
 19
 Here, upon cross-examining the informant James Jones, Dotson's attorney elicited details of the Government's payment of $100 to Jones for his role in the investigation. Jones readily admitted receiving the payment, and Dotson's attorney then developed and incorporated this information into his closing statement, even though the attorney had been unable to use the information in an opening statement. The jury was therefore apprised of the $100 payment to the informant, and had ample opportunity to consider such information before rendering a guilty verdict. Based on this awareness by the jury of the Government's $100 payment, and based on the relatively small amount of money involved, we cannot say that, within the meaning of Bagley, 473 U.S. at 676, a material suppression of evidence undermining our confidence in the outcome Dotson's trial has occurred. Like Dotson's previous two contentions on appeal, Dotson's due process argument also fails.
 
 
 20
 For the above reasons, Dotson's conviction in the district court is
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 Section 3161(c)(1) provides in part,
 In any case in which a plea of not guilty is entered, the trial of a defendant charged in an ... indictment with the commission of an offense shall commence within seventy days ... from the date the defendant has appeared before a judicial officer of the court in which such charge is pending....
 18 U.S.C. § 3161(c)(1) (1988).
 
 
 [2]
 Section 3161(h)(1)(F) provides in part,
 The following periods of delay shall be excluded in computing the time within which ... the trial of any such offense must commence:
 (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to-
 ....
 (F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of such motion....
 18 U.S.C. § 3161(h)(1)(F) (1988).