**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Lee Ross SHEAR, Defendant-Appellant.**

**No. 86–5645.**

United States Court of Appeals,
Fourth Circuit.

Argued May 7, 1987.

Decided Aug. 11, 1987.

**K.K. HALL, Circuit Judge:**

Following the entry of a conditional guilty plea pursuant to Fed.R.Crim.P. 11(a)(2), Lee Ross Shear appeals the denial of his motion to dismiss a multi-count indictment charging him with, *inter alia*, the possession and transfer of counterfeit money in violation of 18 U.S.C. §§ 472 and 473. Shear contends that his indictment was returned in violation of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* He also contends that the imposition of consecutive sentences on different counts of the indictment violated the constitutional ban on double jeopardy. Finding no error in the proceedings below, we affirm.

## I.

The facts in this matter are substantially undisputed. On August 21, 1985, Shear traveled from Rhode Island to Pittsburgh, Pennsylvania, by airplane. He carried in his possession approximately $270,000 in counterfeit $20.00 bills. Later the same day, Shear traveled by automobile from the Pittsburgh airport through West Virginia, to Bellaire, Ohio, accompanied by Bernard Edward "Sonny" Watson.[1] During the trip, Shear gave Watson $10,000 of the counterfeit money. Subsequently, on August 25, 1985, Shear gave $520.00 in counterfeit bills to Reuben Stradwick in Wheeling, West Virginia.

During this time, the United States Secret Service was conducting an investigation prompted by the recovery of large amounts of counterfeit money in northern West Virginia. The investigation revealed that a warrant for Shear's arrest on various counterfeiting charges was outstanding from the United States District Court for the District of New Jersey. Shear was subsequently arrested in West Virginia on the New Jersey warrant.

Following his arrest, a criminal complaint was filed against Shear charging him with transferring counterfeit money in the Northern District of West Virginia. The government moved for detention of the de-

Timothy F. Cogan (Wray V. Voegelin; O'Brien, Cassidy & Gallagher, L.C., Wheeling, W.Va., on brief), for defendant-appellant.

Hunter P. Smith, Jr., Asst. U.S. Atty. (William A. Kolibash, U.S. Atty.; Beth H. Lurz, Sp. Asst. U.S. Atty., Wheeling, W. Va., on brief), for plaintiff-appellee.

Before HALL, PHILLIPS and WILKINS, Circuit Judges.

**1.** Shear had previously contacted Watson and Mary Margaret Renforth by mail seeking their participation in a scheme to distribute counter-feit money and documents. Shear had also mailed counterfeit Rhode Island drivers' licenses to Renforth in Wheeling, West Virginia.

fendant on both the New Jersey and the West Virginia charges. Detention hearings were then scheduled for August 29, 1985, on the New Jersey charges and September 9, 1985, on the West Virginia charges.

At the August 29 hearing before a United States Magistrate, the government presented a certified copy of the indictment pending in New Jersey.[2] After hearing evidence, the magistrate found that Shear was the person named in the warrant predicated upon the New Jersey indictment. It was therefore ordered that Shear be remanded to the custody of the United States Marshal for removal to New Jersey for trial. The magistrate also ordered that the September 9 detention hearing be cancelled.

On September 5, 1985, Shear was transported to New Jersey for trial. On January 29, 1986, he was convicted of conspiracy to possess and transfer counterfeit currency, possession of counterfeit currency and receiving counterfeit currency. A sentence of twelve years imprisonment was subsequently imposed on March 10, 1986.

Investigation of Shear's activities in West Virginia continued while he was incarcerated in New Jersey. On March 21, 1986, a grand jury in the Northern District of West Virginia returned a ten-count indictment charging him with conspiracy, mail fraud, possession and transfer of false identification documents as well as specific counterfeiting violations. On April 8, 1986, Shear was returned to West Virginia and arraigned on the indictment.

Shear subsequently moved to dismiss the indictment on the ground that he had not been indicted within thirty days of his arrest as required by the Speedy Trial Act, 18 U.S.C. § 3161(b). The district court denied the motion, ruling that the indictment was timely because most of the period of delay between Shear's arrest and his indictment was excludable under § 3161(h)(1)(D) as "delay resulting from trial with respect to other charges."

On June 16, 1986, while preserving his right to appeal the denial of his motion to dismiss the indictment, Shear entered a conditional guilty plea pursuant to Fed.R. Crim.P. 11(a)(2). The plea admitted guilt with regard to Count One of the indictment, charging conspiracy to possess and transfer counterfeit federal reserve notes, in violation of 18 U.S.C. § 371; Count Two of the indictment charging possession of counterfeit federal reserve notes, in violation of 18 U.S.C. § 472; Count Three of the indictment charging transfer of counterfeit federal reserve notes, in violation of 18 U.S.C. § 473; Count Four of the indictment charging transfer of counterfeit federal reserve notes, in violation of 18 U.S.C. § 473; Count Five of the indictment charging possession of false identification documents, in violation of 18 U.S.C. § 1028(a)(3); Count Six of the indictment charging transfer of false identification documents, in violation of 18 U.S.C. § 1028(a)(2); and Count Ten of the indictment charging mail fraud, in violation of 18 U.S.C. § 1341.

On September 10, 1986, Shear was sentenced to five years on each of the first four counts of the indictment, to run consecutively with each other and with the sentence imposed upon the New Jersey charges. Shear was also sentenced to specified terms of imprisonment on the remaining charges in the indictment which were to be served concurrently with the sentences imposed on the first four counts and was ordered to pay the mandatory special assessment on each count.

This appeal followed.

II.

On appeal, Shear contends that the district court erred in refusing to dismiss his indictment under the Speedy Trial Act. He argues that the exclusion allowed under § 3161(h)(1)(D) is inapplicable because the

---

**2.** Some confusion has been created by a stipulation signed by an Assistant United States Attorney for the Northern District of West Virginia which stated that Shear was "subsequently indicted" after his return to New Jersey. The record clearly discloses, however, that the stipulation was in error. A New Jersey indictment was already pending at the time of Shear's arrest.

government conceded to the district court that an indictment could have been obtained against him notwithstanding his presence in another district. In Shear's view, since the New Jersey proceedings did not actually cause any delay in his indictment, the period between his arrest on August 25, 1985, and his indictment on March 21, 1986, did not constitute delay "resulting from" trial on other charges.

In addition to his Speedy Trial claim, Shear also contends that the imposition of consecutive sentences for possession of counterfeit money in violation of 18 U.S.C. § 472 and transfer of counterfeit money in violation of 18 U.S.C. § 473 offends the constitutional prohibition against double jeopardy. He argues that possession under § 472 is "incidental" to the greater offense punishable under § 473. We find no merit in any of appellant's contentions.

With regard to the Speedy Trial Act, Shear presumes that the statutory language permitting exclusion of time periods "resulting from trial" on other charges requires an inquiry into actual causation. That interpretation of the Act was, however, soundly rejected in a slightly different context by this Court in *United States v. Velasquez*, 802 F.2d 104 (4th Cir.1986). In *Velasquez*, we held that actual causation was not required before excluding delay "resulting from any pretrial motion" pursuant to § 3161(h)(1)(F). Instead, we concluded that the time between the filing and the disposition of the pretrial motions was automatically excluded.

Our conclusion in *Velasquez* relied substantially upon the Supreme Court's decision in *Henderson v. United States*, 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986). In *Henderson*, the Court refused to limit excludable time under § 3161(h)(1)(F) to delays "reasonably necessary." The Court reasoned that the exclusion for "any period of delay" provided in § 3161(h)(1)(F) was intended by Congress to be both broad and "automatic" in its

operation. The Court, thereby, distinguished § 3161(h)(1)(F) from other provisions of the Act, such as § 3161(h)(7), where Congress expressly provided for consideration of the factual circumstances surrounding the delay. 106 S.Ct. at 1875.

Shear argues that both *Henderson* and *Velasquez* deal only with the scope of § 3161(h)(1)(F), and that neither case is, therefore, dispositive with regard to the correct interpretation of § 3161(h)(1)(D). He also suggests that because a causation inquiry under § 3161(h)(1)(D) presents less conceptual difficulty than it does under § 3161(h)(1)(F), the justification for an automatic operation of the exclusion is diminished. We find appellant's argument singularly unpersuasive.

The statutory language in §§ 3161(h)(1)(D) and (h)(1)(F) is virtually identical. Both provisions clearly allow exclusions of "any period of delay resulting from other proceedings." It is patently unreasonable to suggest that Congress intended the phrase "resulting from" to have two dramatically different meanings within the same statutory subsection. Moreover, appellant ignores the persuasive *dicta* from *Henderson* in which the Supreme Court suggested that all of the exclusions in §§ 3161(h)(1)–(6) were "intended to be automatic." *Id.*

■ We conclude that our reasoning in *Velasquez* with regard to the proper interpretation of § 3161(h)(1)(F) applies with equal force to the operation of § 3161(h)(1)(D). The district court did not, therefore, err in excluding the time between September 5, 1985, and March 10, 1986, as delay "resulting from trial with respect to other charges against the defendant." Furthermore, that exclusion clearly renders Shear's indictment on March 21, 1986, timely without further consideration of any additional exclusions which the government could have asserted.[3]

---

3. The district court did not explicitly calculate the number of days that had expired under the thirty-day limit imposed by § 3161(b). The record discloses nine days between Shear's arrest and his transfer to New Jersey, all of which

would be counted. The § 3161(h)(1)(D) exclusion for trial on other charges logically ended when Shear was sentenced on March 10, 1986, thereby leaving an additional eleven days until his indictment in the Northern District of West

### III.

Turning to Shear's allegation of constitutional error with regard to his sentencing, we likewise find no basis for disturbing the action of the district court. Appellant's effort to characterize his consecutive sentences for possession of counterfeit money and for transferring counterfeit funds as double jeopardy is unavailing. The indictment, to which Shear pleaded guilty, charged that he possessed certain funds on the date of his arrest and that he had previously transferred counterfeit bills to Reuben Stradwick and to Bernard Watson. The mere fact that Shear would first have to possess the counterfeit funds before they could be transferred does not render his continued possession after the transfer a lesser included offense.

In this instance possession and transfer were clearly separate and distinct acts occurring at different times for which separate punishments were applicable.[4] We, therefore, see no constitutional infirmity in the sentence imposed.

### IV.

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.

Virginia. Under the statute, the government was entitled to seek further exclusions for removal proceedings, § 3161(h)(1)(G) and for transportation of the defendant, § 3161(h)(1)(H). Even without those additional exclusions, however, Shear can count no more than twenty days elapsed under § 3161(b).

4. Appellant's reliance on cases such as *United States v. Gaddis*, 424 U.S. 544, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976), is misplaced. In *Gaddis*, the Supreme Court held that a defendant could not be convicted of robbing a bank and receiving the proceeds of the *same* robbery. Shear, however, was not convicted of possessing and transferring the same counterfeit bills.