996 F.2d 1213
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jerry Junior WILLIS, Defendant-Appellant.
 No. 92-5545.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 5, 1993.
Decided: June 30, 1993.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at New Bern. Terrence W. Boyle, District Judge.
 Mary Elizabeth Manton, Federal Public Defender, for Appellant.
 David S. Kris, Criminal Appellate Section, UNITED STATES DEPARTMENT OF JUSTICE, for Appellee.
 G. Alan DuBois, Assistant Public Defender, for Appellant.
 Sidney Glazer, UNITED STATES DEPARTMENT OF JUSTICE, Margaret P. Currin, United States Attorney, Richard B. Conely, Assistant United States Attorney, for Appellee.
 E.D.N.C.
 AFFIRMED.
 Before WILKINSON, Circuit Judge, BUTZNER, Senior Circuit Judge, and VOORHEES, Chief United States District Judge for the Western District of North Carolina, sitting by designation.
 VOORHEES, Chief District Judge:
 OPINION
 A jury convicted Appellant Jerry J. Willis of possession with intent to distribute cocaine base and cocaine, and possession of a firearm during a drug trafficking crime. Willis contends the trial court erred in three respects: 1) violation of his speedy trial rights; 2) exclusion of expert testimony offered by the defense; and 3) admission of rebuttal testimony for the prosecution. Finding no error, we affirm.
 I.
 Willis first assigns as error an alleged violation of the Speedy Trial Act, 18 U.S.C. § 3161, et seq. He contends his motion to dismiss the indictment should have been granted because the government failed to indict him within 30 days of his arrest. 18 U.S.C. § 3161(b). The facts are undisputed. We review the district court's interpretation of law involving this statute de novo. United States v. Wright, 990 F.2d 147 (4th Cir. 1993).
 Federal authorities arrested Willis on October 29, 1991. At the initial appearance hearing on the same day, the government orally moved for pretrial detention, whereupon the magistrate judge ordered Willis detained pending a further detention hearing on October 30, 1991. On October 30, defense counsel moved for and received a continuance of the hearing on detention until November 5, 1991. On November 5th, Willis was ordered detained pending trial. The indictment was filed December 3, 1991, more than 30 days after his federal arrest. The question Willis raises is whether any portion of the time between his arrest and indictment is excludable under the terms of the Speedy Trial Act.
 Under 18 U.S.C. § 3162(a)(1), an indictment in violation of the 30day time period must be dismissed. The district court denied the motion to dismiss, finding that the six-day delay caused by Willis's motion to continue the detention hearing was excludable time. The court based its decision on excludability under the provisions of 18 U.S.C. § 3161(h), without specifying which subsection thereunder it had in mind. Appendix at 39-40.
 Willis argues that the district court's ruling was erroneous because the magistrate judge's continuance of the detention hearing did not include the findings required by 18 U.S.C. § 3161(h)(8)(A). This section prohibits exclusion of delay resulting from the grant of a continuance unless the granting judge 1) bases the continuance on an explicit finding that the ends of justice served by the continuance outweigh the best interests of the public and the defendant to a speedy trial, and 2) sets out reasons for that finding.
 
 
 1
 It is true that the magistrate judge's order of continuance did not include the finding and reasons for it as required by § 3161(h)(8)(A) to justify exclusion of the delay occasioned by the order. Section 3161(h)(1)(F), however, does qualify the delay in question for exclusion. The latter section excludes from computation of the 30 days any delay resulting from "other proceedings concerning the defendant," including "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."[1] 18 U.S.C. § 3161(h)(1)(F). The period between the date of the government's motion to detain Willis on October 29, 1991, and the time of the hearing conducted on November 5, 1991, is therefore excludable time.[2] "The plain terms of the statute appear to exclude all time between the filing of and the hearing on a motion whether that hearing was prompt or not." Henderson v. United States, 476 U.S. 321, 326 (1986); see also, Wright, 990 F.2d at, 1993 U.S. App. LEXIS 6654 at*6; United States v. Shear, 825 F.2d 783, 786 (4th Cir. 1987), cert. denied, 489 U.S. 1087 (1989); United States v. Velasquez, 802 F.2d 104, 105 (4th Cir. 1986).
 
 
 2
 The fact that the hearing on detention was continued did not by itself take the delay out of the exclusion period allowed by subsection (h)(1)(F) and defeat exclusion via the strictures of subsection (h)(8)(A). The latter subsection does not trump the former. See generally, Henderson, supra.
 
 
 3
 It is the pendency of the motion to detain which stopped the speedy trial clock. Id. at 326-27; Wright, 990 F.2d at, 1993 U. S. App. LEXIS 6654 at*6. Excluding that period of pendency, the indictment filed on December 3, 1991, was timely. 18 U.S.C.ss 3161(b), 3162(a)(1); Henderson, supra; Wright, supra. There was no error in the denial of the Appellant's motion to dismiss.
 
 II.
 
 4
 Willis next argues that the trial court erred by refusing to allow his expert witness, Dr. Thomas Brown, to testify that the quantity of cocaine base Appellant possessed was consistent with personal use. The exclusion of expert testimony by a trial court is reviewed by this court for abuse of discretion. United States v. Barsanti, 943 F.2d 428, 432 (4th Cir. 1991), cert. denied sub nom. Griffey v. United States, 112 S. Ct. 1474 (1992).
 
 
 5
 The government had the burden of proving that Willis possessed cocaine base with the concomitant intent to distribute it. As part of the government's direct case, Ray Freeman, a member of the Craven County Sheriff's Department, testified as an expert that one possessing 8.9 grams of cocaine base would "certainly" be a distributor of the drug. Appendix at 144. To counter this testimony, Willis called to the witness stand his girlfriend, Elizabeth Talbert, who testified that Willis had used drugs on a daily basis throughout her relationship with him. He smoked marijuana cigarettes with cocaine base rolled into them. Appendix at 175-76. She also testified that immediately prior to his arrest, he had left their home in New York to travel to North Carolina for "a week or a week and a half." Willis's reason for the trip was "to serve two days" of a prior sentence in North Carolina.
 
 
 6
 Appendix at 178. Willis argues that her testimony supported the proposition that he took cocaine to North Carolina to ensure a supply for personal use during his visit, and not for purposes of distribution.
 
 
 7
 Willis sought to fortify this argument and rebut Ray Freeman's testimony by calling Dr. Brown. In voir dire of Dr. Brown, the trial court heard a proffer of his qualifications and testimony. He was a practicing psychiatrist with a subspecialty in "addiction medicine." He had not personally examined Appellant, nor taken from him a medical history. He would testify on the assumption that Willis was addicted to crack cocaine. Appendix at 196-197. An addict, depending on the severity of the addiction, may use as much as 2 or 3 grams of cocaine base in a day, according to Dr. Brown. Appendix at 196. Moreover, in Dr. Brown's experience, drug addicts often lay in a supply of drugs for their personal use when anticipating travel away from their usual sources of supply.
 
 
 8
 Dr. Brown was unable to testify that a user with a 3 gram per day habit would break down his supply into 50-hit dosage units.[3] Appendix at 200. Moreover, while he would have testified that possession of 9 grams of cocaine base was compatible with personal use for an addict, he also would have said such quantity was not incompatible with distribution of the drug. Appendix at 206.
 
 
 9
 Dr. Brown stated that individuals with severe addictions usually end up dealing in drugs. This testimony would appear to work against Willis's defense, but Willis argues he wanted the evidence: "[I]n order to show that an alleged drug seller is also likely to be a user and therefore may maintain a supply of drugs for personal use in addition to any drugs he may intend to sell." Appellant's Reply Brief at 4.
 
 
 10
 Ms. Talbert testified that Willis used about $200 worth of illegal drugs per week, about half of which went for cocaine base. Appendix at 183. But no evidence tied this quantity to the testimony of Dr. Brown, whereby Appellant sought to account for the 8.9 grams found on Willis as a personal use quantity to last during a trip of up to a week and a half. Appendix at 178, 196. Agent Freeman had testified that 8.9 grams of crack had a street value of $2,000.00. Appendix at 145. Extrapolating from Ms. Talbert's testimony, $150 worth of crack would have lasted Willis for a week and a half. The discrepancy between the girlfriend's testimony and that proferred by Dr. Brown deprived the Brown testimony of any realistic foundation and made it subject to exclusion as confusing and misleading. Fed. R. Evid. 403.
 
 
 11
 The district court found the proffered testimony irrelevant, since no adequate foundation had been laid showing that Willis normally used the amounts in question for personal consumption or even that he could tolerate such amounts. Appendix at 208-09. The court also questioned Dr. Brown's qualifications since he had not testified previously in a drug trafficking case. The court found that the testimony of Dr. Brown should be excluded because his testimony would be confusing to the jury and would provide no information which the jury would not know by virtue of common sense.
 
 
 12
 Under Federal Rules of Evidence 702, an expert may testify if his "knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.
 
 
 13
 Barsanti, 943 F.2d at 432-433 (citations omitted). Based on the forecast of the testimony provided in the voir dire, it is doubtful Dr. Brown's testimony would have assisted the jury in determining any fact in issue.
 
 
 14
 "The 'overriding limitation on expert testimony is the requirement that [u]nder Rules 701 and 702 [of the Federal Rules Evidence], opinions must be helpful to the trier of fact.' " United States v. Hall, 969 F.2d 1102, 1109 (D.C. Cir.), cert. denied, 113 S. Ct. 481 (1992) (quoting United States v. Theodoropoulos, 866 F.2d 587, 591 (3d Cir. 1989)). The trial court has broad discretion in deciding whether to admit expert testimony. Barsanti, 943 F.2d at 432. On this record, the district court did not abuse that discretion.
 
 
 15
 In view of the foregoing disposition of this issue, we find it unnecessary to examine the government's argument that the exclusion of evidence was harmless error, if error at all.
 
 III.
 
 16
 Willis's third argument is that the trial court erred in allowing the government to call a rebuttal witness. The decision of a trial court to allow rebuttal evidence is reviewed under an abuse of discretion standard. Hospital Bldg. Co. v. Trustees of Rex Hosp., 791 F.2d 288, 294 (4th Cir. 1986); United States v. Ortiz, 942 F.2d 903, 915 (5th Cir. 1991), cert. denied sub nom. Garza v. United States, 112 S. Ct. 2966 (1992).
 
 
 17
 The third count of the superseding indictment charged Willis with use of a firearm during a drug trafficking crime. The question for the jury was whether the gun played a role in the drug offense and facilitated it. In its proof, the government presented evidence that the gun in question belonged to Willis and was found in the bed of the pickup truck being driven by Willis at the time of his arrest. It was contained in a paper sack which also contained some cocaine powder. A government witness, Special Agent Key, testified to a statement Willis made during an interview the day after his arrest. In the statement, Willis asserted that the gun was for his protection during his drug trafficking activities. Appendix at 165. Willis's former attorney, Mr. Hollowell, contradicted this testimony during presentation of Willis's evidence. Hollowell testified that he was present when the statement was made and that Willis in fact had denied to Agent Key that the gun was used for protection during drug deals. Appendix at 245-247. According to Hollowell, Agent Key persisted in asking Willis about the gun, but that each time Key asked the question, Willis denied having the gun for protection. Appendix at 246-47. In rebuttal, the government recalled Special Agent Key, who repeated, over objection by Willis, his earlier testimony that Willis had told him the gun was for protection during illegal drug activity. Appendix at 258. Agent Key went on to say that Willis "readily admitted ... very early in the conversation" that the gun was for protection during drug deals. Appendix at 258. Willis claims the admission of this rebuttal evidence was error because it did not concern any new information elicited in the defendant's case, but served at most simply to reiterate the government's earlier evidence, citing Allen v. Prince George's County, 737 F.2d 1299 (4th Cir. 1984). " [R]ebuttal evidence may be introduced only to counter new facts presented in the defendant's case in chief." Id. at 1305.
 
 
 18
 The purpose of rebuttal evidence is to refute evidence from an opponent. Graham, Michael H., Federal Practice & Procedure, § 6553 at 147 (Interim ed. 1992) (citing Rodriguez v. Olin Corp., 780 F.2d 491 (5th Cir. 1986)). Evidence which refutes may deny, explain, "or otherwise shed[ ] light on evidence offered by an opponent as to a fact of consequence in the litigation including the credibility of witnesses." Id.; see also, United States v. Renfro, 620 F.2d 497 (5th Cir.), cert. denied, 449 U.S. 921 (1980) (the government's witness reenacted the crime. Defendant then took the stand and acted out his version of the events. The trial court properly allowed rebuttal by the government which included a repeated re-enactment of the government's version of events); United States v. Hunt, 749 F.2d 1078, 1084 (4th Cir. 1984), cert. denied, 472 U.S. 1018 (1985) (holding that once the defendant "opened the door" to a new theory in his case, the government was entitled to rebuttal to refute that theory); Hospital Bldg. Co., 791 F.2d at 294 (where the court allowed limited rebuttal to highlight the differences between experts' testimony). The district court has broad discretion in questions of admission of rebuttal evidence. Ortiz, supra.
 
 
 19
 Hollowell's testimony amounted to "new" evidence which the government was entitled to address through rebuttal by Agent Key. Key's rebuttal testimony was responsive to Hollowell's version of the facts and was not merely a restatement of Key's earlier testimony.
 
 
 20
 In a given case, even the most careful scrutiny of a record on appeal may not readily admit of easy distinctions between rebuttal testimony that merely rehashes primary evidence and that which addresses new subtleties introduced by the form of defendant's denials. But the record here leaves us with no doubt that the district court was well within its discretion to admit the rebuttal testimony of Agent Key.
 
 IV.
 
 21
 The trial court committed no error and the Appellant's convictions are affirmed.
 
 AFFIRMED
 
 
 [1]
 The day on which the motion was made and the day on which the hearing was held are both excluded for purposes of computing the time under 18 U.S.C. § 3161. United States v. Kington, 875 F.2d 1091, 1107 (5th Cir. 1989)
 
 
 [2]
 Oral motions are equivalent to written ones for speedy trial purposes. United States v. Noone, 913 F.2d 20, 27 n.11 (1st Cir. 1990), cert. denied, 111 S. Ct. 1686 (1991)
 
 
 [3]
 Appellant was found in possession of 8.9 grams divided into 50 portions at the time of his arrest