**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4041
_____

UNITED STATES OF AMERICA

v.

KERRY WOODS,

Appellant

_____

On Appeal from the District Court of the Virgin Islands
(D.C. Criminal No. 3-06-cr-00080-008)
District Judge: Hon. Curtis V. Gomez
_____

Argued December 9, 2013

BEFORE: FISHER, COWEN AND NYGAARD,  Circuit Judges

(Filed: August 21, 2014)

Darren John-Baptiste, Esq. **(Argued)**
Unit 3
2329 Commandant Gade
St. Thomas, VI 00802

*Counsel for Appellant*

Nelson L. Jones, Esq. **(Argued)**
Delia L. Smith, Esq.
Office of United States Attorney
5500 Veterans Building, Suite 260

United States Courthouse
St. Thomas, VI 00802-6924

     *Counsel for Appellee*


_____

OPINION

_____


COWEN, <u>Circuit Judge</u>

The defendant-appellant, Kerry Woods, appeals the judgment of conviction entered against him by the District Court of the Virgin Islands.  We will affirm.

**I.**

Because this opinion lacks precedential value and because we write solely for the parties, we will only set forth the facts that are necessary to inform our analysis.

The instant appeal follows a lengthy and complex series of proceedings before the District Court that concerned the prosecution of several individuals, including Woods, for their roles in a drug trafficking conspiracy.[1]  Following trial, Woods was convicted by a jury of conspiring to possess with intent to distribute cocaine, a violation of 21 U.S.C. § 846.  Relatedly, in response to a special interrogatory, the jury determined that at least five kilograms of cocaine were attributable to him.

_____

[1] We have elsewhere detailed the scope and complexity of those proceedings.  *See e.g.*, *United States v. Freeman*, Nos. 09-2166 & 10-4224, 2014 WL 4056533, at *1-3 (3d Cir. Aug. 18, 2014); *United States v. Claxton*, No. 12-3933, 2014 WL 4056561, at *1-4 (3d Cir. Aug 18, 2014) [hereinafter "*Claxton II*"]; *United States v. Claxton*, 685 F.3d 300, 302-04 (3d Cir. 2012) [hereinafter "*Claxton I*"].

2

Woods now appeals from that judgment of conviction, raising five arguments in favor of reversal or outright vacatur. We will address each of those arguments in turn.[2]

## II.

Woods first argues that the District Court violated his rights under the Speedy Trial Act of 1974, 18 U.S.C. § 3161, *et seq.* ("STA"), specifically directing our attention to the period between and including January 14, 2009 and July 20, 2009. This argument is essentially identical to the argument raised by one of Woods's co-defendants, Craig Claxton, in a separate but related appeal. *See Claxton II*, 2014 WL 4056561, at *6-7. In *Claxton*, with respect to the period that is at issue here,[3] we stated:

> During that time, there were numerous emergency motions filed by his co-defendants requesting extensions of time to file responses and objections to pre-sentence reports, notices of unavailability, motions to continue status conferences, requests for hearings, and even a motion to extend the time to file pretrial motions. These motions served to toll the speedy trial clock for all defendants until the District Court held a hearing on the motions. *See* 18 U.S.C. § 3161(h)(1)(D) (tolling of STA clock occurs during time between filing of a pretrial motion and the required hearing on that motion); *see also United States v. Tannehill*, 49 F.3d 1049, 1052 n.4 (5th Cir. 1995) (finding that where defendants requested a hearing, it was unnecessary to determine whether the hearing was "required" for STA purposes). The record reveals that the District Court conducted a hearing on at least some of these motions at the moving defendants' request on October 7, 2009, at which time the District Court set a date for trial. The intervening time, therefore,

---

[2] The District Court had jurisdiction over the underlying criminal proceedings pursuant to 48 U.S.C. § 1612 and 18 U.S.C. § 3231. Our appellate jurisdiction arises under 28 U.S.C. § 1291.

[3] In *Claxton II*, we examined the period between and including January 19, 2009 and July 20, 2009. But the extra five days that are here at issue—i.e., January 14-18, 2009—do not affect our analysis.

was excludable under the STA. *See Henderson v. United States*, 476 U.S. 321, 326 (1986) ("The plain terms of the [STA] appear to exclude all time between the filing of and the hearing on a motion whether that hearing was prompt or not.").

*Id.* at *7 (some citations omitted). Because that reasoning applies here with equal force, we adopt and apply it here, and we thus reject Woods's argument under the STA.

**III.**

Woods next argues that the evidence adduced at trial was insufficient to support his conviction. Specifically, he argues that the evidence does not demonstrate that he knew that the object of the conspiracy was the distribution of cocaine. We disagree.

"To prove a conspiracy, the government must show: (1) a shared unity of purpose; (2) an intent to achieve a common illegal goal; and (3) an agreement to work toward that goal." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 425 (3d Cir. 2013) (*en banc*). "[T]he second element—'illegal goal'—"requir[es] proof that the defendant had knowledge of the specific objective contemplated by the particular conspiracy," which "can be demonstrated [either] by actual knowledge or willful blindness." *Id.*; *see also United States v. Brodie*, 403 F.3d 123, 148 (3d Cir. 2005). "The government must establish each element beyond a reasonable doubt," and it may do so by presenting either "direct or circumstantial evidence." *Caraballo-Rodriguez*, 726 F.3d at 425.

This Court, when reviewing the sufficiency of the evidence to support a criminal conviction, must sustain the jury's verdict "'if there is substantial evidence, viewed in the light most favorable to the government, to uphold the jury's decision.'" *Id.* at 430

4

(quoting *United States v. Gambone*, 314 F.3d 163, 170 (3d Cir. 2003)). "[T]he critical inquiry" in such appeals "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 424-25 (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). This standard of review is "particularly deferential," and we will not "usurp the role of the jury by weighing credibility and assigning weight to the evidence[.]" *Id.* at 430 (quoting *Brodie*, 403 F.3d at 133).

At trial, two witnesses detailed Woods's role in the drug trafficking conspiracy. First, Glenson Isaac—a cooperating witness—identified Woods and testified that Woods twice transported ten kilograms of cocaine from the United States Virgin Islands to North Carolina. Later, a second witness, Alexis Wright, corroborated Isaac's testimony. Wright stated that she recognized Woods as an individual that she had picked up from the airport, at Isaac's direction, on several occasions.

Furthermore, Isaac testified about Woods's presence at "the farm," a property used by members of the drug trafficking conspiracy to store cocaine and "to talk about drug activities and fight dogs." (J.A. 540.) Isaac stated that he had been to the farm on at least ten occasions and had seen Woods there.

Taken in sum, this testimony supports the jury's verdict. The evidence presented at trial sufficiently demonstrates that Woods knew that the conspiracy's objective was the distribution of cocaine. *Cf. Claxton I*, 685 F.3d at 312-13 (sustaining the conviction and rejecting the argument upon the sufficiency of the evidence raised by a co-conspirator

5

who was tried together with Woods).  That knowledge was adequately established by the totality of the evidence.

> [T]he fact that [he] was identified as a member of a drug-trafficking organization by an admitted-conspirator, that he repeatedly did that organization's bidding, that he was entrusted to help transport [drugs], . . . and that he frequented the place where the organization's drugs were stored and its business discussed all strongly suggest that he was aware of his role in the conspiracy for which he was prosecuted.  The totality of those circumstances was more than enough to allow the jury to rationally decide beyond a reasonable doubt that he was guilty.

*Id.* (citations omitted).  Consequently, we will "uphold the jury's conclusion that [Woods] was a knowing member of [the] drug-trafficking conspiracy."  *Id.* at 313.

## IV.

Woods's remaining arguments—i.e., his arguments upon the District Court's admission of evidence of a September 20, 2003 drug seizure, denial of a motion for a mistrial related to alleged jury tampering, and denial of a motion for a mistrial related to alleged violations of *Brady v. Maryland*, 373 U.S. 83, 97 (1963)—are similar to his argument under the STA, insofar as they mirror arguments that were raised and rejected in *Claxton II*.  *See* 2014 WL 4056561, at *14-15, *16-19.  We will reject those arguments here for the same reasons that they were rejected in *Claxton II*, and we see no need to further elaborate on the analyses set forth in that case.

## V.

For the reasons set forth above, we will affirm Woods's judgment of conviction.